AUTORIDAD DE FUENTES FLUVIALES DE PUERTO RICO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

Núm. 1131.—*Sometido:* Noviembre 29, 1943. *Resuelto:* Enero 12, 1944.

*C. Domínguez Rubio,* abogado de la recurrente; el registrador recurrido .compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Joaquín Sanabria y su esposa son dueños de una finca rústica sobre la cual pesan dos hipotecas con sus respectivos créditos accesorios. La primera a favor de The Federal Land Bank of Baltimore por $1,300. La segunda a favor de Estados Unidos de América por $530. Sobre esta finca los referidos esposos constituyeron una servidumbre a favor de la Autoridad de Fuentes Fluviales de Puerto Rico, por la cual se le concede (1) atravesar la finca con los alambres de una línea de transmisión, creando así una servidumbre a perpetuidad de 600 pies de longitud, y (2) pasar por debajo de la línea de transmisión en una parcela de 600 pies de largo por 50 pies de ancho, fijándose sus colindancias.

En la escritura en que se constituyó la servidumbre, comparece el Federal Land Bank of Baltimore por Mastella Clark Reed, y. el otro acreedor, Estados Unidos de América,

por J. B. Klein, liberando de sus respectivas hipotecas la ameritada parcela.

El documento se inscribió en cuanto a la servidumbre y en cuanto a la liberación de la hipoteca de los Estados Unidos, y se denegó la inscripción en lo que respecta a la hipoteca del Federal Land Bank of Baltimore porque no se hace constar:

(*a*) Que el Federal Land Bank of Baltimore sea el actual dueño del pagaré transmisible por endoso que garantiza dicha hipoteca, extendido a la orden del citado Banco, y

(*b*) Haber el notario autorizante de la escritura puesto en el referido pagaré la correspondiente nota creditiva de la liberación.

Se consignó además el defecto subsanable de haberse usado en la escritura guarismos en la expresión de fechas y cantidades sin que a continuación de los mismos se expresasen en letras, y se consignó además el defecto de haber usado abreviaturas e iniciales para designar otorgantes.

El Federal Land Bank of Baltimore no puede realizar la liberación parcial de la finca hipotecada sin acreditar debidamente su capacidad legal para ello. A ese fin no basta que el pagaré transmisible por endoso se haya extendido a su orden al tiempo de constituirse la hipoteca que lo garantiza. Era preciso que en la fecha de la liberación el Banco fuese el tenedor. Esto es así porque de conformidad con el artículo 153 de la Ley Hipotecaria, en las hipotecas constituídas para garantizar obligaciones transmisibles por endoso o títulos al portador, al endosar o enajenar el pagaré o título al portador, según fuere el caso, el crédito hipotecario que lo garantiza se entiende transferido al nuevo tenedor del documento sin necesidad de ponerlo en conocimiento del deudor ni hacer constar la transferencia en el Registro de la Propiedad. Así pues, el que en alguna forma disponga del pagaré, ya cancelándolo total o parcialmente, ya liberando de la hipoteca en todo o en parte la finca que lo ga-

rantiza, acreditará su capacidad, presentándolo al notario que ha de autorizar la escritura, quien de conformidad con el artículo 82 de la ley lo inutilizará, si de pago total se trata, o extenderá una nota al dorso del documento si el pago es parcial, expresando en este último caso la cantidad pagada a cuenta de la obligación. En la escritura el notario deberá dar fe de la inutilización del documento o transcribirá la nota, según fuere el caso.

Si en el presente caso, en que no se trata del pago total o parcial de la obligación, el Banco hubiese presentado al notario el pagaré y éste hubiera dado fe de que en la fecha del otorgamiento el Banco aparecía como tenedor del pagaré transmisible por endoso, la capacidad del Banco hubiera sido satisfactoriamente acreditada. En defecto de presentarlo al notario, como no se trataba de pago total ni parcial, no siendo por consiguiente de aplicación el artículo 82 de la Ley Hipotecaria, pudo haberse acompañado el pagaré a la escritura al presentarla al Registro y de ese modo también hubiera quedado acreditada ante el Registrador la capacidad del Banco para liberar la parcela objeto de la servidumbre. Si no se exigiese que el otorgante acreditase su capacidad, fácil sería a una persona poco escrupulosa que no tuviese interés alguno en el pagaré transmisible por endoso o título al portador, comparecer ante un notario y liberar total o parcialmente de la hipoteca la finca gravada en garantía de dicha obligación.

■■ Pretende la recurrente haber acreditado la capacidad legal del Federal Land Bank of Baltimore, invocando algunas de las presunciones disputables o controvertibles contenidas en el artículo 102 de la Ley de Evidencia. Esa proposición es insostenible. La seguridad y certeza que el Registro de la Propiedad debe garantizar a los que consultan sus libros en busca de información sobre la titulación y estado o libertad de cargas de las fincas inscritas, no permite que sus asientos descansen en meras presunciones controvertibles, presunciones que como su nombre indica, y pres-

cribe el propio artículo 102 citado, sólo constituyen prueba satisfactoria mientras no sean contradichas mediante otra evidencia. Y como dijimos en el caso de *Autoridad de Tierras* v. *Registrador,* 62 D.P.R. 506, 509:

"Esa función [la de calificar] está regulada por el artículo 18 de la Ley Hipotecaria que expresamente prescribe que 'los registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicita la inscripción y la capacidad de los otorgantes *por lo que resulte de las mismas escrituras.'* (Bastardillas nuestras.) El Registrador, al calificar un documento, no resuelve cuestiones de hecho ni aprecia evidencia. Su misión consiste en examinar los documentos auténticos que se le presentan, ya como principal, ya como complementarios, para con lo que de ellos resulte y de los datos o antecedentes que arrojen los asientos del Registro relacionados con el título presentado, determinar si puede legalmente practicarse la inscripción o anotación que se solicita."

■ Insinúa la recurrente sin tratar de demostrarlo que el no haber acreditado el Banco su capacidad, defecto que el Registrador califica de insubsanable, es a lo sumo una falta subsanable.

La falta de acreditar la capacidad es de las que los tratadistas de Derecho Hipotecario sostienen que pueden ser subsanables o insubsanables, según los casos. Si por el título presentado o por las constancias del Registro, el Registrador tiene motivo racional para creer que la capacidad existe y que es posible acreditarla, en ese caso el no hacerlo se calificará de defecto subsanable. Por el contrario, si el Registrador no tiene motivo racional para esa creencia, el no acreditar la capacidad se calificará de defecto insubsanable y procederá denegar la inscripción. El siguiente ejemplo ilustrará mejor nuestra tesis: En una escritura de hipoteca el deudor comparece por medio de mandatario. Éste no exhibe al notario el poder que dice tener ni lo acompaña a la escritura de hipoteca al solicitar la inscripción, ni existe en el Registro constancia alguna en relación con la finca de que se trata de la que aparezca que en efecto el mandatario

tenga el poder que invoca. En tal caso el Registrador no tiene motivo racional para creer que el poder existe y debe denegar la inscripción por el defecto insubsanable de no haber acreditado el mandatario sus facultades. En cambio, en la misma transacción el mandatario exhibe el poder al notario. Éste expresa en la escritura el hecho de habérsele exhibido, pero no expresa opinión sobre la suficiencia de las facultades del mandatario o se limita a consignar que a juicio del notario el mandatario tiene facultades bastantes para otorgar la escritura de hipoteca; pero no copia literalmente las cláusulas que contienen las facultades del apoderado, de suerte que el Registrador, que es el llamado a calificar el documento, pueda determinar por sí mismo la suficiencia del poder, ni se acompaña a la escritura una copia certificada del poder. En tales circunstancias, puesto que se sabe que el poder existe, el Registrador tiene motivo racional para creer que la capacidad existe y es posible acreditarla. En ese caso el defecto debe calificarse de subsanable. Véanse Galindo y Escosura, Legislación Hipotecaria, tomo 2, pág. 573, y Morell, Legislación Hipotecaria, tomo 3, pág. 254.

Aplicando la doctrina enunciada al defecto que indica el Registrador, tendremos que al extenderse el pagaré transmisible por endoso, necesariamente debió consignarse en el pagaré y lo mismo en la escritura de hipoteca, que la obligación se expedía a la orden del Federal Land Bank of Baltimore. Siendo ello así, al inscribirse la hipoteca, necesariamente tuvo que aparecer en el asiento de inscripción el nombre de la persona a cuya orden se expidió la obligación transferible por endoso. Por lo tanto, por las constancias del Registro tenía motivo racional el Registrador para creer que el Federal Land Bank of Baltimore fuese el tenedor del pagaré al otorgarse la liberación, y como en el ejemplo anterior, el defecto debe calificarse de subsanable.

Consideraremos ahora el supuesto defecto insubsanable de no haber extendido el notario al dorso del pagaré

la nota acreditativa de la liberación parcial. El artículo 82 de la Ley Hipotecaria, reguladora de la materia, sólo exige esa nota cuando del pago total o parcial se trate. Dicho precepto legal en lo pertinente dice así:

"Las inscripciones hechas para responder de cantidades representadas por títulos al portador o trasmisibles por endoso, se cancelarán presentándose la escritura otorgada *por los que hayan cobrado los créditos, en la cual debe constar haberse inutilizado en el acto de su otorgamiento, los títulos endosables al portador. . . .*" (Bastardillas nuestras.)

La Ley Hipotecaria de España, de 16 de diciembre de 1909, que introdujo ciertas innovaciones que estimó necesarias en relación con la cancelación de los títulos transferibles por endoso y títulos al portador, no creyó necesario adicionar ese requisito que no exigía la Ley anterior. Si atendemos al verdadero propósito legislativo al regular esta clase de obligaciones nos daremos cuenta de que ese requisito es innecesario. Fué el propósito legislativo facilitar y acelerar las operaciones de crédito, permitiendo que estos pagarés circulasen con la misma facilidad y rapidez que el dinero, y a ese fin dispuso en el artículo 153 de la Ley Hipotecaria que al endosar o enajenar una de estas obligaciones, el crédito hipotecario se entendería transferido con el pagaré sin necesidad de dar de ello conocimiento al deudor ni de hacer constar la transferencia en el Registro. Pero no fué el propósito del legislador que el pagaré reemplazase al Registro de la Propiedad y el que acepta una de esas obligaciones debe recurrir al Registro para cerciorarse de cualquier información relativa al crédito hipotecario que lo garantiza.

No exigiendo la ley el requisito a que se refiere la nota del Registrador, es obvio que el incumplimiento del supuesto requisito por parte del notario no puede ser constitutivo de defecto.

■ Por último, discutiremos ahora el supuesto defecto subsanable de haberse usado en la escritura guarismos en la expresión de fechas y cantidades, sin que al pie de los mismos se consignasen en letras, así como haber usado abreviaturas e iniciales para designar otorgantes.

Es verdad que la sección 17 de la Ley Notarial prohibe el uso de guarismos en la expresión de fechas y cantidades, a no ser que al pie de las mismas se consignen en letras. Pero como el incumplimiento de ese precepto legal no afecta la validez del título ni produce necesariamente la nulidad de la obligación, el supuesto defecto no es ni subsanable ni insubsanable. Es de los que Galindo y Escosura y Morell califican como una omisión que podrá motivar una corrección gubernativa, pero que no constituye defecto. Galindo y Escosura, ob. cit., t. 2, pág. 541; Morrell, ob. cit., t. 3, pág. 226.

■ Lo mismo puede decirse con respecto a la abreviatura "Mr." tan conocida en esta Isla como la de "Sr." El uso de abreviaturas debe evitarse, claro está, cuando pueda producir confusiones, pero tratándose de la usada en este caso, no hay posibilidad de confusiones y por consiguiente puede usarse libremente.

■ El defecto que señala el Registrador en relación con el uso de iniciales se refiere a haber escrito el notario el nombre del otorgante que representó a los Estados Unidos de América en la siguiente forma: "J. B. Klein". El artículo 9 de la Ley Hipotecaria, en sus incisos 5 y 6, prescribe que toda inscripción expresará "el nombre y apellido de la persona . . . a cuyo favor se hace la inscripción", y "el nombre y apellido de la persona . . . de quien proceden inmediatamente los bienes o derechos que deban inscribirse." Pero como el artículo 21 de la Ley Hipotecaria dispone que las escrituras públicas de actos o contratos que deban inscribirse, expresarán por lo menos *todas* las circunstancias que bajo pena de nulidad debe contener la inscripción, y sean relativas a las personas de los otorgantes, a las fincas, y a

los derechos inscritos, y en el presente caso no se han omitido todos los requisitos que comprenden los incisos 5 y 6 del artículo 9, pues no puede decirse que el nombre del otòrgante ha sido totalmente omitido, ya que aparecen sus iniciales y el apellido, el defecto, si bien existe, debe calificarse de subsanable. Véase Galindo y Escosura, ob. cit., t. 2, pág. 579.

*Por todo lo expuesto procede revocar la nota recurrida excepto en lo que al defecto de capacidad se refiere, con respecto al cual deberá modificarse la calificación, considerándolo como defecto subsanable, y ordenarse la inscripción del documento sujeta únicamente al indicado defecto.*

El Juez Asociado Sr. Snyder no intervino.