THE ROYAL BANK OF CANADA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN OCTAVA, recurrido.

*Número:* O-74-405      *Resuelto:* 14 de noviembre de 1975

*Brown, Newsom & Córdova* y *Jorge Souss Villalobos,* abogados de la recurrente; la Registradora recurrida compareció por escrito.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

En 1973 doña Ana Amelia Pasarell, mayor de edad, viuda, secretaria ejecutiva y residente en San Juan adquirió una propiedad mediante la correspondiente escritura pública de compraventa. Su título fue inscrito en el Registro de la Propiedad con anotación de defecto subsanable por no constar en la escritura el estado civil de la compradora con anterioridad al otorgamiento cuando hizo entrega del precio al vendedor. *Bacó* v. *Registrador*, 63 D.P.R. 697 (1944).

Sin que se hubiese subsanado el mencionado defecto, la Sra. Pasarell otorgó escritura constituyendo hipoteca voluntaria sobre la referida propiedad en garantía de un pagaré al portador. El Registrador de la Propiedad denegó la inscripción de dicha hipoteca bajo la nota siguiente:

"Denegada la inscripción . . . por observarse que la finca consta inscrita a favor de Ana Amelia Pasarell, con el defecto subsanable de no haberse expresado su estado civil al efectuar el pago del precio de venta y cuyo defecto no ha sido subsanado aún, tomándose por tal razón anotación preventiva por 120 días . . . ."

El tenedor del pagaré hipotecario, aquí recurrente, alega que tal denegatoria es errónea en derecho, ya que la anotación de defecto subsanable no impide la inscripción. La cuestión puede reducirse a determinar si dicha falta subsanable, que claramente vincula la capacidad de la compradora para otorgar la hipoteca denegada, es suficiente obstáculo de registro para sostener la actuación del Registrador.

La falta de aseveración del estado civil de la viuda compradora al momento de hacer el pago al vendedor, priva al Registrador de un dato esencial de la inscripción como lo es la naturaleza ganancial o privativa del inmueble adquirido. Exige el Art. 9 de la Ley Hipotecaria (30 L.P.R.A. sec. 34) que toda inscripción expresará la naturaleza, extensión, con-

diciones y cargas del derecho que se inscriba, e iguales datos del derecho sobre el cual se constituya el que sea objeto de la inscripción (incisos 2 y 3); y la naturaleza del título que deba inscribirse y su fecha (inciso 4).

■ De todas las circunstancias de los asientos de inscripción unas son *esenciales,* de manera que su omisión o expresión inexacta sustancial, puede provocar la nulidad de la inscripción. Cuando se omiten las circunstancias de validez comprendidas en los incisos 2, 3 y 4 del citado Art. 9, la inscripción es nula. (¹) *Piñero* v. *Registrador,* 75 D.P.R. 455 (1953).

(¹) Art. 9, Ley Hipotecaria (30 L.P.R.A. sec. 34)

"Toda inscripción que se haga en el Registro expresará las circunstancias siguientes:

"1. La naturaleza, situación y linderos de los inmuebles objeto de la inscripción o a los cuales afecte el derecho que deba inscribirse, y su medida superficial con arreglo a la usada en el país, y su equivalencia en el sistema métrico decimal, nombre y número, si constaren del título.

"2. La naturaleza, extensión, condiciones y cargas de cualquiera especie del derecho que se inscriba y su valor, si constase del título.

"3. La naturaleza, extensión, condiciones y cargas del derecho sobre el cual se constituya el que sea objeto de la inscripción.

"4. La naturaleza del título que deba inscribirse, y su fecha.

"5. El nombre y apellido de la persona, si fuese determinada, y no siéndolo, el nombre de la Corporación o el colectivo de los interesados a cuyo favor se hace la inscripción.

"6. El nombre y apellido de la persona, o el nombre de la Corporación o persona jurídica de quien procedan inmediatamente los bienes o derechos que deban inscribirse.

"7. El nombre y residencia del Tribunal, Notario o funcionario que autorice el título que se haya de inscribir.

"8. La fecha de la presentación del título en el Registro, con expresión de la hora.

"9. La conformidad de la inscripción con la copia del título de donde se hubiera tomado; y si fuere éste de los que deben conservarse en el oficio del Registro, indicación del legajo en que se encuentre.

"10. La fecha de la inscripción y firma entera del Registrador."

Art. 21 (30 L.P.R.A. sec. 46)

"Las escrituras públicas de actos o contratos que deban inscribirse, expresarán por lo menos todas las circunstancias que bajo pena de nulidad debe contener la inscripción y sean relativas a las personas de los otorgantes, a las fincas y a los derechos inscritos."

■ Es cuestionable la calificación que de "subsanable" dio el Registrador al defecto apuntado. Las faltas subsanables, como las insubsanables, lo mismo pueden surgir de la *forma* que del *contenido* del título. Roca Sastre, *Derecho Hipotecario*, Tomo II, pág. 284 y ss. Ed. Sexta; Art. 65, Ley Hipotecaria (30 L.P.R.A. sec. 114). "La edad y el estado civil son datos indispensables para calificar la capacidad de los otorgantes, por lo que deben hacerse constar en los títulos así, para apreciar si una persona puede gravar o trasmitir, caso de ser menor de edad o viudo." Morell y Terry, *Comentarios a la Legislación Hipotecaria*, Tomo II, pág. 151, Ed. 1927. Faltando en la escritura de compraventa una clara adveración del estado civil de la compradora al efectuar el pago, el asiento registral carece de certeza de cuál fuera el verdadero titular del inmueble comprado y debió denegarse la primera inscripción.

Los principios de legalidad, publicidad y especialidad, soportes del Registro, exigen un claro aviso y advertencia a tercero que surja de la simple lectura del asiento o anotación practicada en los libros. Quedaría gravemente vulnerado el régimen si se impusiera al interesado la obligación de poner en tela de juicio la calificación de "subsanable" puesta por el Registrador e iniciar su propia pesquisa de la que podría resultar que la falta es "insubsanable" y la inscripción nula.

---

Art. 30 (30 L.P.R.A. sec. 55)

"Las inscripciones de los títulos expresados en las secs. 2 y 5 de este título serán nulas cuando carezcan de las circunstancias comprendidas en los números 1.°, 2.°, 3.°, 4.°, 5.°, 6.°, y 8.° de la sec. 34 de este título y en el número 1.° de la sec. 38 de este título."

Art. 32 (30 L.P.R.A. sec. 57)

"Se entenderá que carece la inscripción de alguna de las circunstancias comprendidas en los números y secciones citados en la sec. 55 de este título, no solamente cuando se omita hacer mención en ella de todos los requisitos expresados en cada uno de las mismas secciones o números, sino también cuando se expresen con tal inexactitud, que pueda ser por ello el tercero inducido a error sobre el objeto de la circunstancia misma, y perjudicado además en su consecuencia."

A tal conclusión desnaturalizante de nuestro sistema registral se llega en *Caballero* v. *Registrador*, 42 D.P.R. 635, 638 (1931), en *dictum* del Juez Wolf. De reiterar ahora este criterio equivaldría a negar la protección de tercero, nervio central de nuestro derecho inmobiliario, y dejar a éste que se proteja a sí mismo con pesquisas y averiguaciones.

"El principio de legalidad es el que impone que los títulos que pretendan su inscripción en el Registro de la Propiedad, sean sometidos a un *previo examen, verificación o calificación*, a fin de que en los libros hipotecarios solamente tengan acceso los títulos válidos y perfectos.

"En un sistema en que los asientos registrales se presumen o reputan exactos o concordantes con la realidad jurídica, es lógica la existencia de un previo trámite depurador de la titulación presentada a registro. De lo contrario, como dice JERÓNIMO GONZÁLEZ, los asientos sólo servirían para engañar al público, favorecer el tráfico ilícito y provocar nuevos conflictos. Según la exposición de motivos de la ley de 1861, el Registro debe contener las obligaciones que produzcan derechos reales cuyos títulos tengan valor jurídico, no aquéllos a que las leyes niegan fuerza coactiva.

"Si en un buen sistema de Registro la nulidad de un título inscrito es inoperante en cuanto pueda perjudicar a un tercero adquirente de buena fe, es evidente la necesidad de evitar, en cuanto sea posible, que los títulos nulos puedan llegar a ser inscritos. No ocurre así en los sistemas de transcripción, en los cuales en ningún caso la registración de un título nulo puede impedir que su nulidad afecte a tercero, pues el Registro se desentiende de los vicios del documento registrado, y éste vale por lo que valiere. Por tal motivo en estos sistemas el Registrador está reducido al papel de un simple autómata o mero archivero." Roca Sastre, Tomo II, pág. 239, Edición Sexta. (Énfasis del autor.)

■ Como ha dicho Roca "un buen sistema de Registro" no abre sus libros para títulos imperfectos. El principio, hon-

rado en la Ley Hipotecaria Española, vino a menos en Puerto Rico en el texto del vigente Art. 65 (30 L.P.R.A. sec. 114) que ordena: "Los registradores no suspenderán por defectos subsanables la inscripción, anotación o cancelación de ningún título. En la inscripción harán constar los defectos que contenga el título y en cualquier tiempo en que se presente la documentación para subsanarlo, se hará constar la subsanación por medio de nota marginal." En acertada crítica a esta modificación introducida en Puerto Rico, el comentarista Morell resume: "Ahora bien, si se nos pregunta si esa solución [que atribuye distintas consecuencias a las faltas] será o no más conveniente para el crédito territorial, diremos que no creemos que le favorezca, porque al fin viene a ser secuela o consecuencia de un sistema por nosotros combatido. Creemos que la inscripción debe ser la que represente el nacimiento ante todos y para todos del derecho real, y que el Registro sólo debe admitir y dar vida a derechos perfectos. Cuanto más inatacable resulte el derecho inscrito, mayor será su firmeza, mayores sus ventajas, y más seguridad debe prestar al crédito territorial." Morell y Terry, *op. cit.*, Tomo III, pág. 310, Segunda Ed. (1928). Hasta que por legislación se restituya la deseable norma de dar acceso al Registro únicamente a títulos impecables, suspendiendo la inscripción de aquellos que adolecieren de defecto subsanable (*Talcott Inter-Amer. Corp.* v. *Registrador*, 104 D.P.R. 254 (1975) nada impide calificar como insubsanables las faltas que afecten la validez del título a tal extremo sustancial que exija denegar la inscripción preservando el principio de legalidad y la protección debida a tercero. Nuestro Derecho por ser puertorriqueño no ha de encerrarse en márgenes ribereñas rechazando el fecundo aliento de la universalidad.

El defecto insubsanable erróneamente calificado como falta menor, dio acceso al Registro a una inscripción trunca y engañosa que no permite al tercero informarse de si la viuda era única dueña del inmueble o si su dominio estaba

compartido con los herederos del esposo. En este último caso la inscripción nula elevaba al plano de legitimación registral un contrato que afectaba sus bienes y al que ellos no habían consentido.

Es correcta y debe ser mantenida la regla enunciada en *P.R. Finance Corp.* v. *Registrador,* 96 D.P.R. 150, 153 (1968), que copiamos:

"Si bien es cierto que de acuerdo con las disposiciones del Art. 65 antes transcrito, un defecto subsanable no impide inscripciones posteriores, cuando se trata de un defecto sobre la capacidad de los contratantes la cuestión es distinta. Como expresamos en *Autoridad de Fuentes Fluviales* v. *Registrador,* 62 D.P.R. 753 (1944): 'La falta de acreditar la capacidad es de las que los tratadistas de Derecho Hipotecario sostienen que pueden ser subsanables o insubsanables, según los casos. Si por el título presentado o por las constancias del Registro, el Registrador tiene motivo racional para creer que la capacidad existe y que es posible acreditarla, en ese caso el no hacerlo se calificará de defecto subsanable. Por el contrario, si el Registrador no tiene motivo racional para esa creencia, el no acreditar la capacidad se calificará de defecto insubsanable y procederá denegar la inscripción.' No habiéndose subsanado el defecto, el Registrador estuvo correcto en no inscribir, ya que no había constancia de que la otorgante no fuera casada al momento de hacer el pago inicial. Y si lo era estaría gravando un inmueble sin que comparecieran los herederos del esposo fenecido. *Rivera* v. *El Registrador de la Propiedad,* 17 D.P.R. 323 (1911); *Nido & Cía., S. en C.* v. *Registrador,* 74 D.P.R. 789, 802 (1953). Parafraseando lo que expresamos en *Rivera:* si en el presente caso la compareciente tiene realmente capacidad para otorgar la escritura de hipoteca, será bien fácil demostrarlo. Y una vez destruido el obstáculo legal que existe la inscripción se verificará sin dificultad alguna."

■ Si por las razones dichas carece de validez la primera inscripción relativa a la compraventa, no puede erigirse sobre ésta un segundo nivel de nulidad dándole entrada al Registro a la hipoteca constituida por la compradora.

*La nota denegatoria será confirmada.*