PLAZA DEL REY, INC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD, SECCIÓN SEGUNDA DE SAN JUAN, recurrido.

*Número:* RG-91-567     *Resuelto:* 27 de abril de 1993

*José R. Gómez Alegría*, abogado de la recurrente; *Oscar O. Olivencia Font*, Registrador recurrido; *Raúl J. Tous Bobonis*, Vicepresidente de la Asociación de Notarios de Puerto

Rico, Inc., y *Margarita E. García Cárdenas*, quienes comparecen en calidad de *amicii curiae*.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Plaza del Rey, Inc. y el Registrador de la Propiedad, Sección Segunda de San Juan (Hon. Oscar O. Olivencia Font, R.), solicitan la reconsideración parcial([1]) de la sentencia recaída en el presente recurso el 23 de junio de 1992, avalada por los pronunciamientos de *Casa Blanca Properties v. Registrador*, 130 D.P.R. 609 (1992). Nos piden, además, que la norma que se adopte tenga efectos prospectivos. La Asociación de Notarios, como *amicus curiae*, ha sometido un memorándum.

## I

Conviene reproducir los hechos, así como la parte dispositiva de este recurso gubernativo según nuestra sentencia:

> Mediante Escritura Núm. 101 otorgada en San Juan el 29 de abril de 1991 ante el notario José R. Gómez Alegría, la corporación recurrente Plaza del Rey, Inc. individualizó y vendió a Jorge Estarellas y esposa el último apartamento Núm. 2,202 en multipisos sometido al régimen de propiedad horizontal. R & G Federal Savings Bank, tenedora de dos pagarés —uno por $3,350.00 y otro por $270,000.00 garantizados por hipotecas sobre el edificio—, compareció a liberarlas del referido apartamento, y en pago de arancel por dicha liberación sólo consignó en el Registro comprobantes por $8.00. El Registrador denegó la inscripción por entender que faltaban $14,372.00 del arancel por cancelación de hipoteca.
>
> La situación la gobierna *Cas[a B]lanca Properties, Inc. v. Registrador*, (en circulación). Allí, al enfrentarnos a una situación análoga resolvimos: "La estructura jurídica de la hipoteca representada por título al portador o endosatario impone como

---

([1]) No se cuestiona la corrección de la norma que exige el pago total de los aranceles correspondientes al valor de la hipoteca, en ocasión de liberársele de gravamen del último apartamento individualizado.

único medio [de] liberación —en protección de tercero y del propio adquirente de apartamento individualizado— la cancelación parcial o total del gravamen por el método y procedimiento ordenado en el Art. 138 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2462."

Dar paso a la contención de la recurrente Plaza del Rey, Inc. al efecto de que la acreedora R & G Federal Savings Bank no viene obligada a cancelar las hipotecas e inutilizar los pagarés representativos de las mismas, implicaría darle permanencia en el Registro a hipotecas desnaturalizadas, sin garantía inmobiliaria y en el mercado de valores, dos pagarés no menos engañosos.

Cuando el valor del crédito está representado por títulos al portador o transferible por endoso, la vía exclusiva para liberar de gravamen el apartamento individualizado es la cancelación total o parcial ordenada así en el Art. 138 de la Ley Hipotecaria del que citamos:

"Sin perjuicio de lo dispuesto en la sec. 2460 de este título sobre la cancelación de gravámenes posteriores, las inscripciones de hipoteca constituidas para garantizar obligaciones representadas por títulos transferibles por endoso o pagaderos al portador, cualquiera que sea la denominación que se les asigne, se cancelarán total o parcialmente mediante escritura otorgada por los tenedores legítimos de los títulos expresados. En todo caso deberá hacerse constar en la escritura la identificación de los títulos y su inutilización o reducción parcial en el acto del otorgamiento." (30 L.P.R.A. sec. 2462).

Se confirma la nota recurrida. Sentencia de 23 de junio de 1992.

Se objeta el pronunciamiento relativo a que el "único medio de liberación [de *una hipoteca* en garantía de títulos al portador o a la orden es mediante] la cancelación parcial o total del gravamen por el método o procedimiento ordenado en el Art. 138 de la Ley Hipotecaria".

Consideran que la opinión está fundada en una aplicación incorrecta del concepto de la indivisibilidad de *la hipoteca* (Arts. 174 y 138 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2570 y 2462, respectivamente) y que atenta contra el principio de la autonomía contractual y elimina la posibilidad de las liberaciones gratuitas. Examinemos la validez de estos planteamientos.

## II

En el planteo del problema, nos confrontamos con una controversia jurídica que tiene como marco fáctico una práctica seguida por los desarrolladores de urbanizaciones, condominios y obras comerciales y turísticas de gran extensión, con los auspicios de la banca. Para garantizar el préstamo de construcción, de ordinario constituyen una hipoteca menor que el costo total de la obra. Se nos apunta que dicha hipoteca "usualmente se constituye en garantía de un préstamo rotativo, que permite que la misma se *pueda seguir usando en las diferentes etapas del Progreso del proyecto, sin tenerse que incurrir en el pago de gastos arancelarios y honorarios de nuevas hipotecas o sus ampliaciones, cuyos gastos en última instancia, los paga el consumidor*".[2] (Énfasis suplido.) Alegato del *amicus curiae*, págs. 10–11. La cuestión está entrelazada al principio de la indivisibilidad de la hipoteca.

■ Este principio persigue asegurarle al *acreedor* hipotecario que su garantía se mantendrá *íntegra* independientemente de los cambios físicos que sufra la finca. Sin embargo, las partes pueden pactar en contra de dicha indivisibilidad y lograr liberación de cierta parte de la finca gravada o la cancelación parcial de la hipoteca.

■ Esa libertad contractual o el principio de la voluntad de las partes significa que "[l]os contratantes pue-

---

[2] Este esquema de financiamiento y constitución de garantía podría en ciertos casos suscitar situaciones de extinción de la hipoteca debido a la desaparición total del crédito garantizado.

Los planteamientos de los comparecientes traslucen cierta inconformidad con el sistema arancelario dispuesto por el legislador. Compete a éste corregir o enmendar la alegada rigidez o falta de claridad de las disposiciones legales que gobiernan el asunto. A este Foro judicial, sin embargo, le corresponde velar por el fiel cumplimiento de la legislación vigente.

Ciertamente, una cosa es que en el terreno de la voluntad de las partes y la libre contratación sea viable y permisible la liberación gratuita; otra diferente es que dicho mecanismo se pretenda utilizar para el fraude y la evasión del pago de aranceles.

den establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. Véanse: *Ab Intestato Saldaña Candelario*, 126 D.P.R. 640 (1990); *Sucn. Sepúlveda Barreto v. Registrador*, 125 D.P.R. 401 (1990); *Campos del Toro v. Ame. Transit Corp.*, 113 D.P.R. 337 (1982). La liberación de una finca por parte del acreedor fue validada en el caso *Federal Land Bank v. Registrador*, 70 D.P.R. 983 (1950).(³)

Frente a esta normativa, aceptamos que la norma de *Casa Blanca Properties v. Registrador*, supra, puede pres-

---

(³) De esta manera el acreedor hipotecario acuerda con su deudor dirimir la garantía hipotecaria mediante su reducción parcial sin que necesariamente ocurra una reducción *simultánea* del crédito o derecho hipotecario. Es decir, se reduce la extensión del inmueble mediante su segregación (o mediante la liberación de porciones ya segregadas), sin que necesariamente se reduzca el principal de la hipoteca, y se libera de la hipoteca la porción segregada. Tal acuerdo es un ejercicio válido de la autonomía de la voluntad salvaguardada por el Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372.

Como afirma Chico y Ortiz, "[l]a renuncia de la hipoteca es un acto puramente voluntario que extingue la misma en base del principio de autonomía de la voluntad". J.M. Chico y Ortiz, *Estudios sobre Derecho Hipotecario*, Madrid, Ed. Cometa, 1982, T. II, pág. 1028.

En *Federal Land Bank v. Registrador*, 70 D.P.R. 983, 985–986 (1950), expresamos:

"Admitiendo éste que a virtud de la enmienda introducida al artículo 119 de la Ley Hipotecaria por la Ley núm. 62 de 21 de julio de 1923 ((1) pág. 407), en las hipotecas constitu[i]das a favor del Federal Land Bank no se distribuye la responsabilidad aunque sean gravadas varias fincas, sino que cada una responde de la totalidad del préstamo, es obvio que al liberarse una de las fincas en este caso como garantía, no pudo tener el efecto de constituir una donación.

"*Si el Banco tenía a su favor hipotecas sobre varias fincas para garantizar la deuda contraída por el Sr. Lugo Arce y, sin cancelar o condonar parte alguna de dicha deuda, se limita a liberar como garantía una de las fincas hipotecadas, es forzoso concluir, sin que fuera necesario decirlo expresamente en la escritura, que el Banco considera que las demás fincas hipotecadas constituyen suficiente garantía de su crédito.* De no haber sido así el Banco no hubiera hecho tal liberación. Nada hay en el lenguaje usado en la escritura que pueda interpretarse en el sentido de que fue la intención del Banco donarle a su deudor parte del préstamo que le hizo en el año 1925. La deuda subsiste en su integridad.

.      .      .      .      .      .      .

"Empero, ni bajo las disposiciones del artículo 560 del *Código Civil* ni bajo la sección 1(a), supra, puede sostenerse que la liberación parcial de una garantía hipotecaria pueda constituir una donación. Como hemos dicho, el Sr. Lugo Arce continúa adeudando al Banco la misma suma que adeudaba antes de otorgar la escritura núm. 221. *El pagaré original no ha sido cancelado en forma alguna y lo único que ha hecho el Banco es aceptar una garantía menor a la que antes tenía.*" (Énfasis suplido.)

tarse a interpretaciones contradictorias. Por un lado, parece establecer que el *único medio de liberación de una hipoteca es la cancelación parcial onerosa o cancelación total del gravamen*; por otro, en el último párrafo del esc. 6 dispusimos que "[m]ientras quedase un solo apartamento por liberar, podía tomarse la liberación como reducción de la garantía hipotecaria, al exclusivo arbitrio del acreedor ...".Íd., pág. 617.

■■■ Aclaramos que la vía del Art. 138 de la Ley Hipotecaria y del Registro de la Propiedad, *supra, no* es única y que dependerá de la voluntad acordada entre el acreedor y deudor hipotecario. Será necesario, como vía exclusiva, solamente cuando la finca no pueda ser dividida; es decir, cuando se trate del remanente de la finca principal sobre la cual se aplica el gravamen hipotecario. Será menester entonces acudir primeramente a lo dispuesto en el Art. 174 de la Ley Hipotecaria y del Registro de la Propiedad, 31 L.P.R.A. sec. 2570, que dispone:

> Si una finca hipotecada *se dividiere en dos (2) o más*, no se distribuirá entre ellas el crédito hipotecario *sino cuando voluntariamente lo acordaren el deudor y el acreedor. No verificándose esta distribución*, podrá repetir el acreedor por la totalidad de la suma garantizada contra cualquiera de las nuevas fincas en que se haya dividido la primera o contra todas a la vez. (Énfasis suplido.)

■ Claro, cuando también el acreedor y el deudor hipotecario acordasen que para liberar una finca registralmente se pagará determinada cantidad onerosa de dinero, y que será abonada al principal de la hipoteca, entonces será necesario acudir al Art. 138 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*; de lo contrario, no es necesario, pues se trata de una reducción en el pagaré sin efectos sobre la hipoteca. Así lo resolvimos en *Autoridad de Fuentes Fluviales v. Registrador*, 62 D.P.R. 753 (1944), ci-

tado además en *Federal Land Bank v. Registrador*, supra, pág. 987:

> En cuanto al defecto subsanable consignado por el recurrido por el hecho de no haber el notario hecho constar en el pagaré la liberación de la finca como garantía hipotecaria, en el caso de *Autoridad de Fuentes Fluviales v. Registrador*, 62 D.P.R. 753, resolvimos que no tratándose en casos de esta naturaleza *de una cancelación total o parcial* de la obligación, no es aplicable el artículo 82 de la Ley Hipotecaria citado por el recurrido en su nota, y que bastaba que el notario otorgante de la *escritura de liberación se le muestre el pagaré para que pueda dar fe de que el Banco es el tenedor del mismo*. (Énfasis suplido.)

En definitiva, *procede reconsiderar nuestros pronunciamientos en Casa Blanca Properties v. Registrador, supra, relativos a reconocer las liberaciones* gratuitas *entre partes que, dependiendo del acuerdo y el propósito, pueden o no ser gratuitas. Cf. Srio. de Hacienda v. Tribunal Superior, 95 D.P.R. 436 (1967).*

## III

A los fines de salvaguardar o evitar que se defraude a terceros, *procede modificar el pronunciamiento de Autoridad de Fuentes Fluviales v. Registrador*, supra, *a los únicos efectos de que se actualice el pagaré con respecto a las garantías que lo respaldan, que prospectivamente siempre se haga constar al dorso del pagaré o mediante "allonge" los casos de liberación.*