# 2007 DTA 90

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE MAYAGÜEZ/AGUADILLA**
**PANEL IX**

EVARISTO QUIÑONES REYES, *ET AL*
Peticionarios

v.

ARTURO CORREA NIEVES, *ET ALS*
Recurridos

Núm. KLCE-2007-00568

San Juan, Puerto Rico, a 9 de julio de 2007

Panel integrado por su Presidente, el Juez Rodríguez Muñiz
y los Jueces Soler Aquino y Cordero Vázquez

Cordero Vázquez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Evaristo Quiñones Reyes, su esposa, la Sra. Cecilia Badillo Crespo, y la sociedad legal de bienes gananciales compuesta por ambos (en adelante, el peticionario Quiñones) acuden ante nuestra consideración mediante un recurso de *Certiorari*, en el que solicitan que revisemos la *Orden* emitida el 20 de marzo de 2007, notificada el 21 de ese mes y año, por el Tribunal de Primera Instancia, Sala de Aguada (en adelante, el TPI). En ésta, el TPI declaró Con Lugar la solicitud de reapertura y para compeler a arbitraje presentada por Punta del Mar, Inc. y ordenó al peticionario Quiñones a someterse al arbitraje de la contención de cuál de las partes de epígrafe debe responder por determinados contratos de opción otorgados con terceros.

Examinados los escritos de las partes comparecientes y contando con el derecho aplicable, resolvemos expedir el auto solicitado para confirmar la *Orden* recurrida.

### I

Según alegado por el peticionario Quiñones, el 28 de septiembre de 1993, éste adquirió mediante escritura de compraventa 60 parcelas ubicadas en los Barrios Río Grande y Puntas del Municipio de Rincón (en adelante, la Finca Principal) por la suma de $2,500,000. Su cabida total, de aproximadamente 316 cuerdas, incluye la parcela D, descrita como:

*"Rústica: Parcela D: Predio de terreno identificado como parcela D en el plano de inspección del proyecto Punta del Mar Beach Village, S.E., con una cabida superficial de 17.886.65m/c, equivalente a 4.5509 cuerdas, radicadas en el Barrio Río Grande y Punta de Rincón, en lindes... Propiedad Inscrita a favor de Punta del Mar Beach Village, S.E., al folio 211 del Tomo 143 de Rincón (en adelante, la Parcela D)."* (*Petición de Certiorari*, Ap. 1, a la pág. 3.)

Su intención al adquirir la Finca Principal era desarrollar un magno complejo residencial y turístico, al que denominó Punta del Mar. Con ese propósito se asoció con el señor Nicomedes Barreto González (en adelante, Barreto González) y el 22 de septiembre de 1994 constituyeron mediante escritura pública la sociedad especial denominada West Coast Development, S.E. (en adelante, West). Más tarde, en búsqueda de capital para

desarrollar el proyecto, aceptaron a Arturo Correa Nieves (en adelante, Correa Nieves) como socio especial.

Efectivamente, el 19 de julio de 1996, el peticionario Quiñones, Barreto González, West (representada por el peticionario Quiñones) y Correa Nieves suscribieron un *Contrato De Inversión*. En éste acordaron que:

*"1. Organizarían la sociedad especial Punta del Mar, S.E., cuya participación de capital sería: 42.75% del peticionario Quiñones; 19% de Barreto González; 33.25% de Correa Nieves; y 5% a Punta del Mar, Inc. (en adelante, la recurrida PDM), corporación que crearían para ser el socio administrador de la sociedad especial.*

*2. West y el peticionario Quiñones venderían a Punta del Mar, S.E. las parcelas de la Finca Principal.*

*3. Punta del Mar, S.E. no asumiría las deudas y/o obligaciones que el peticionario Quiñones y West pudiesen tener con terceros en relación a la Finca Principal.*

*4. La escritura de constitución de sociedad especial contendría una "cláusula(s) estableciendo controles adecuados para garantizar la participación de todos los socios en las principales decisiones de la sociedad, pero a la misma vez permita una administración fluida de las operaciones día a día".* (*Petición de Certiorari*, Ap. 5, a las págs. 66-70.)

Posteriormente, el 13 de agosto de 1997, las partes suscribieron una *Enmienda al Contrato de Inversión* por la que modificaron el acápite seis y ocho incluidos en los *Términos y Condiciones del Contrato de Inversión*. En lo pertinente, éstos acordaron que Punta del Mar, S.E. *"no es responsable de los depósitos recibidos por West... Sin embargo se honrarán los contratos de opción suscritos siempre y cuando se transfieran los fondos a [Punta del Mar, S.E.]; siendo responsabilidad de [el peticionario Quiñones y Barreto González] la transferencia y pago de los depósitos de opción de compra".* (Énfasis suplido.) (*Petición de Certiorari*, Ap. 5, a la pág. 73.)

En vez de constituir una sociedad especial, el peticionario Quiñones, Barreto González, Correa Nieves y la recurrida PDM procedieron a constituir dos sociedades especiales: Punta del Mar, S.E. (mediante *Escritura Número Doscientos Ochenta y Tres*, de 15 de agosto de 1996) y Punta del Mar Beach Village, S.E. (mediante *Escritura Número Trescientos Ochenta Y Siete*, de 2 de noviembre de 1996). La participación de las partes en el capital de ambas sociedades especiales se estableció tal como fueron impartidas en el *Contrato de Inversión*.

El 28 de octubre de 2005, el peticionario Quiñones presentó una *Demanda* contra Correa Nieves y la recurrida PDM, entre otros. [1] Mediante una extensa lista de 54 alegaciones, el peticionario Quiñones atribuyó serias irregularidades en la administración de los negocios que Correa Nieves y la recurrida PDM habían estado haciendo a cargo de las sociedades especiales y su principal activo, los terrenos procedentes de la Finca Principal. Entre otras faltas, arguyó que de las 109.5 cuerdas agrupadas de la Finca Principal que cedió a la sociedad especial Punta del Mar Beach Village, S.E., la recurrida PDM, como socio especial administrador, pero sin el consentimiento de los socios especiales, enajenó la Parcela D a favor de una corporación cuyo único accionista es Correa Nieves; despojando a los demás socios de su participación social sin pagarles su justo valor.

El 8 de noviembre de 2005, Correa Nieves solicitó al TPI la desestimación de la *Demanda*, justificada en un acuerdo de arbitraje suscrito por las partes mediante la *Escritura Número Trescientos Ochenta Y Siete*, de 2 de noviembre de 1996. [2] Dicha cláusula lee:

*"DIECINUEVE: Arbitraje.*

*Cualquier disputa o controversia originada por o relacionada con este contrato, o con el manejo de los negocios de la Sociedad Especial [Punta del Mar Beach Village], serán resueltos mediante arbitraje en la ciudad de San Juan, Puerto Rico, de acuerdo con las reglas del "American Arbitration Association" entonces en vigor,*

*entendiéndose que se llevarán a cabo bajo las leyes estatales del Estado Libre Asociado de Puerto Rico ya la decisión del árbitro o árbitros podrá ser sometida a cualquier tribunal de jurisdicción competente."* (*Petición de Certiorari*, Ap. 2, a la pág. 38.)

Atendida la comparecencia de las partes, el 7 de abril de 2006, el TPI dictó *Sentencia* desestimando sin perjuicio el pleito. La determinación, registrada y archivada en los autos el 26 de abril de 2006, ordenó al peticionario Quiñones que, *"de querer proseguir sus reclamaciones, presentar[a] las mismas en un procedimiento de arbitraje bajo las reglas del American Arbitration Association".* (*Petición de Certiorari*, Ap. 4, a la pág. 52.) Sin embargo, el TPI expresamente reservó su jurisdicción para decretar la reapertura del caso, a solicitud de parte interesada. ■

Conforme a lo resuelto, el peticionario Quiñones presentó la controversia ante la *American Arbitration Association*, Arbitraje Núm. 50-115-T-0034306. Pendiente de adjudicarse el caso, la recurrida PDM compareció ante el árbitro en solicitud de remedio titulado *Moción Urgente Para Compeler Arbitraje Y/O de Resolución Declaratoria.* Informó que diferentes personas, ajenas al contrato entre las partes, habían presentado querellas ante el Departamento de Asuntos del Consumidor (en adelante, DACO) por las que le reclamaban el cumplimiento específico de determinados contratos de opción a compraventa otorgados por West, sobre solares individuales pertenecientes a una de las sociedades especiales bajo su administración. Alegó que, aun cuando se comprometió a honrar dichos contratos mediante *Enmienda al Contrato de Inversión*, su obligación estaba sujeta a la condición de que los dineros de las opciones fueran transferidos a Punta del Mar Beach Village, S.E., lo que nunca se realizó. Habida cuenta de lo anterior, la recurrida PDM solicitó que se le compeliera, junto al peticionario Quiñones, a Correa Nieves y a Barreto González, arbitrar la disputa de **quién** debía asumir los contratos de opción o, en la alternativa, emitiera una resolución reconociendo que Punta del Mar Beach Village, S.E. no estaba obligada a asumir dicha obligación hasta que se cumpliera la condición suspensiva acordada.

Simultáneamente, la recurrida PDM compareció ante el DACO, mediante *Moción Urgente de Paralización de los Procedimientos*. En su escrito informó al Oficial Examinador a cargo del caso las circunstancias por las que advino en posesión de los solares opcionados y cómo los dineros correspondientes nunca le habían sido transferidos. Sostuvo que, pendiente de adjudicarse el procedimiento de arbitraje, convenía la paralización de la vista administrativa pautada para el 26 de marzo de 2007, hasta resolverse **qué entidad** (West o Punta del Mar Beach Village, S.E.) sería responsable frente a los terceros querellantes por el cumplimiento específico de los contratos de opción. Atendido su reclamo, el 19 de marzo de 2007, DACO emitió *Orden*, por la que declaró No Ha Lugar la solicitud de paralización. En su determinación expresó que:

*"Entendemos que la [solicitud] es tardía, que lo que se va a resolver en el arbitraje es la relación entre las partes en el contrato y no con relación a terceros, que él o los árbitros, de tener jurisdicción, no han ordenado la paralización de los procedimientos de estas vistas."* (*Petición de Certiorari*, Ap. 7, a la pág. 90.)

Entretanto, en espera de que sus mociones fueran resueltas, el 20 de marzo de 2007, la recurrida PDM compareció ante el TPI mediante *Moción Urgente de Reapertura y para Compeler Arbitraje*. Tras invocar la jurisdicción del TPI como único foro que puede compeler a las partes al arbitraje, informó la controversia entre los socios respecto a la interpretación de: 1) el *Contrato de Inversión*; 2) la *Enmienda al Contrato de Inversión*; y 3) la *Minuta* del 19 de febrero de 1998, ■ y de las gestiones hechas ante la *American Arbitration Association* y el DACO. Considerado su reclamo, el 20 de marzo de 2007, el TPI emitió *Orden Para Compeler a Arbitraje*. En dicha resolución, notificada el 21 de marzo de 2007, el TPI expresó que:

*"Atendida la moción urgente de reapertura y para compeler arbitraje del codemandado, Punta del Mar, Inc. presentada el 20 de marzo de 2007 y **en atención a nuestra interpretación del convenio de arbitraje** conforme nuestra sentencia de 7 de abril de 2006, se ordena a Evaristo Quiñones, Arturo Correa Nieves y Punta del Mar, Inc., a que sometan a arbitraje, en el caso ante la American Arbitration Association Núm. 50 115 T 00343 06, la*

*controversia sobre si West Coast Development, S.E. o Punta del Mar Beach Village, S.E., debe honrar los contratos de opción otorgados en 1994 con los querellantes del caso ante el Departamento de Asuntos del Consumidor en Luis Rico et al. v. Punta del Mar, Inc. et al., Querellas Núm. 5000006332, 6362, 6333, 6692. (Petición de Certiorari, Ap. 6, a las págs. 85.)"*

Inconforme, el peticionario Quiñones presentó ante el TPI una oportuna solicitud de reconsideración. Arguyó que la única intención de la recurrida PDM era paralizar la vista administrativa para evitar el cumplimiento específico de los contratos de opción, pues tenía otros planes para los solares opcionados. Mediante *Oposición a Moción de Reconsideración*, la recurrida PDM insistió en la necesidad de compeler a las partes a arbitrar la controversia de **quién** debería honrar los contratos de opción, pues:

*"Si el DACO concluye que [la recurrida PDM] es responsable ante los querellantes, [ésta] puede nivelar contra Evaristo Quiñones para que el Panel de Árbitros determine la responsabilidad de Evaristo Quiñones al no entregar los dineros de las opciones pagadas por los querellantes, según el contrato de inversión enmendado.*

*Hay que recordar que en DACO no hay demandas de coparte ni demandas contra tercero. El derecho de nivelación solamente lo puede ejercer un querellado contra otro en el Tribunal. En este caso, el foro adecuado es ante un Panel de Árbitros por ser una controversia entre socios."* (Petición de Certiorari, Ap. 8, a las págs. 94-95.)

Atendidas las comparecencias, el 4 de abril de 2007, el TPI declaró No Ha Lugar la solicitud de reconsideración. Inconforme con la determinación, el peticionario Quiñónes acude ante nos mediante el presente recurso alegando que:

*"1. Erró el Tribunal de Primera Instancia, Sala de Aguada, al ordenar arbitrar una controversia que a todas luces no es arbitrable.*

*2. Erró el Tribunal de Primera Instancia, Sala de Aguada, al ordenar arbitrar una controversia sobre la que sólo DACO tiene jurisdicción."*

## II

En nuestra jurisdicción existe una vigorosa política pública a favor del arbitraje. El Tribunal Supremo de Puerto Rico (en adelante, el TSPR) recientemente reiteró que el arbitraje es el medio menos técnico, más flexible y menos oneroso para la resolución de disputas. *Corporación del Fondo de Seguro del Estado v. Unión de Médicos,* res. el 6 de marzo de 2007, 170 D.P.R. __, **2007 J.T.S. 40**.

En *Municipio de Mayagüez v. Lebrón,* res. el 21 de abril de 2006, 167 D.P.R. __, **2006 J.T.S. 79**, el TSPR resolvió que la facultad que poseen las partes para obligarse al arbitraje de las posibles controversias futuras relacionadas con su contrato, surge principalmente de la Ley de Arbitraje Comercial, 32 L.P.R.A. §§ 3201-3229. Esta ley dispone que las partes podrán incluir en un convenio por escrito, una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos sobre dicho acuerdo o en relación con el mismo. Tales convenios serán válidos, exigibles e irrevocables salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. 32 L.P.R.A. § 3201. Por lo tanto, según se indicó en el caso antes citado, el arbitraje contractual es una figura de naturaleza contractual. ■

El arbitraje convencional es exigible sólo cuando se ha pactado y, conforme la Ley de Arbitraje, dicho pacto debe ser escrito. 32 L.P.R.A. § 3201. Si existe controversia con respecto a la obligación de arbitrar, las partes tienen derecho a que se dirima en los tribunales. *Municipio de Mayagüez v. Lebrón, supra; Crufon Const. v. Aut. Edif. Púbs.,* 156 D.P.R. 197 (2002). La determinación de si un acuerdo crea el deber de las partes de arbitrar una controversia en particular es tarea judicial. Por tanto es función del tribunal auscultar la intención de las partes

para determinar cuáles controversias se pactaron arbitrar, toda vez que siendo el arbitraje un asunto contractual no se puede obligar a una parte a someter a arbitraje una disputa que no ha acordado someter. *Crufon Const. v. Aut. Edif. Públs., supra.*

Cabe destacar que, conforme a lo establecido en *Bird Const. Corp. v. A.E.E.*, 152 D.P.R. 928 (2000), existe una presunción de arbitrabilidad cuando el contrato tiene una cláusula de arbitraje. Por lo tanto, cuando un contrato contenga una cláusula de arbitraje, los tribunales no deben intervenir en la determinación sobre si un asunto es arbitrable o no, a menos que sea claro que la cláusula de arbitraje no cubre la controversia en particular. Toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor. *Bird Const. Corp. v. A.E.E., supra,* citando a *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986).

Según ha señalado el TSPR, la controversia sobre arbitraje admite tres (3) modalidades. Puede referirse a si existe un convenio de arbitraje, si tal convenio alcanza determinada controversia o si tal convenio alcanza una disputa sobre la duración o expiración del contrato. *Municipio de Mayagüez v. Lebrón, supra; World Films, Inc. v. Paramount Pict. Corp.,* 125 D.P.R. 352 (1990); *McGregor-Doniger v. Tribunal Superior,* 98 D.P.R. 864 (1970). Corresponde a los tribunales resolver las disputas que se hayan excluido del procedimiento de arbitraje en el contrato. *Medina v. Cruz Azul de P.R.,* 155 D.P.R. 735 (2001). Pero puntualizamos, ante la existencia de un convenio de arbitraje *"lo más prudente es la abstención judicial, aunque la intervención no está vedada... Cuando se acuerda el uso de arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia". Corporación del Fondo de Seguro del Estado v. Unión de Médicos, supra.* ▄

En Puerto Rico impera el principio de la libertad de contratación. El Artículo 1207 de nuestro Código Civil, 31 L.P.R.A. § 3372, establece en lo pertinente que los contratantes pueden establecer los pactos, cláusulas y condiciones que interesen, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. En repetidas ocasiones, el TSPR ha reconocido que la voluntad contractual está limitada solamente por los criterios establecidos en la disposición estatutaria antes citada. *S.L.G. Irizarry v. S.L.G. García,* 155 D.P.R. 713 (2001); *Arthur Young & Co. v. Vega III,* 136 D.P.R. 157 (1994); *Plaza del Rey, Inc. v. Registrador,* 133 D.P.R. 188 (1993); *Casiano, Jr. v. Borintex Mfg. Corp.,* 133 D.P.R. 127 (1993).

Sabido es que los contratos se perfeccionan por el mero consentimiento y desde ese momento obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. 31 L.P.R.A. § 3375. El Artículo 1233 del Código Civil, 32 L.P.R.A. § 3471, dispone que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Ahora bien, si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá esa sobre aquéllas.

En *Marcial v. Tomé,* 144 D.P.R. 522 (1997), el TSPR reconoció que se debe seguir la letra clara del contrato, cuando la misma refleja inequívocamente la voluntad de las partes. A pesar de lo dispuesto, hay ocasiones en que no es posible determinar la voluntad de los contratantes con la mera lectura literal de las cláusulas contractuales. Por eso, el Código Civil dispone en su Artículo 1234, 31 L.P.R.A. § 3472, que se podrá juzgar la voluntad de los contratantes por sus actos anteriores, coetáneos y posteriores a la perfección del mismo. En repetidas ocasiones se ha reconocido la utilidad de tales criterios para interpretar los contratos. *S.L.G. Irizarry v. S.L.G. García, supra; Marcial v. Tomé, supra; Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, Inc.,* 128 D.P.R. 842 (1991); *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64 (1983); *Cooperativa La Sagrada Familia v. Castillo,* 107 D.P.R. 405 (1978); *Merle v. West Bend Co.,* 97 D.P.R. 403 (1969). Sin embargo, al momento de interpretar un contrato es preciso presuponer lealtad, corrección y buena fe en su redacción e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas. Dicho en otras palabras, no se puede buscar oscuridad ni tergiversar la interpretación de los contratos para llegar a resultados

absurdos o injustos. *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503 (1988).

### III

En el caso que nos ocupa, la controversia versa sobre si deberá ser resuelto en un procedimiento de arbitraje cuál de las partes es la llamada a responder por los contratos de opción a compra suscritos por West, conforme a lo pactado en la cláusula 19 de la *Escritura Privada de Constitución de Sociedad Especial,* otorgada por el peticionario Quiñones y la recurrida PDM.

Como ya indicáramos en la discusión del derecho, cuando un contrato contenga una cláusula de arbitraje, los tribunales no debemos intervenir en la determinación sobre si un asunto es arbitrable o no, salvo que surja claramente del contrato que determinada controversia no está cobijada bajo la referida cláusula. Tomando como guía lo establecido en la ley y en la jurisprudencia, procedemos a analizar la cláusula en cuestión.

El acápite 19 del inciso sobre *Términos y Condiciones* de la *Escritura Número Trescientos Ochenta y Siete,* sobre constitución de sociedad especial, en lo pertinente, dispone que:

*"Cualquier disputa o controversia originada por o relacionada con este contrato, o con el manejo de los negocios de la Sociedad Especial [Punta del Mar Beach Village], serán resueltos mediante arbitraje en la ciudad de San Juan, Puerto Rico, de acuerdo con las reglas del "American Arbitration Association" entonces en vigor, entendiéndose que se llevarán a cabo bajo las leyes estatales del Estado Libre Asociado de Puerto Rico ya la decisión del árbitro o árbitros podrá ser sometida a cualquier tribunal de jurisdicción competente."* (*Petición de Certiorari,* Ap. 2, a la pág. 38.)

Ciertamente, la letra del contrato es clara en cuanto la voluntad de las partes otorgantes, entiéndase: el peticionario Quiñones, Barreto González, Correa Nieves y la recurrida PDM. La mera lectura de la citada cláusula refleja inequivocamente la voluntad de éstos de resolver mediante arbitraje las controversias relacionadas al manejo de los negocios de Punta del Mar Beach Village, S.E., vinculadas a dicho acuerdo o en relación con el mismo. Apreciadamente, entre estas controversias se debe incluir la disputa relacionada a la ratificación que Punta del Mar Beach Village, S.E. hizo de los contratos de opción otorgados por West y la alegada contingencia de determinada condición suspensiva.

Por tanto, resuelto que las partes acordaron el uso de arbitraje como mecanismo para ajustar la controversia, lo más prudente es la abstención judicial. Siendo así, no se cometió el error imputado.

### IV

Por los fundamentos antes expresados, procedemos a expedir el recurso de *Certiorari* solicitado por el peticionario Quiñones y confirmar la orden recurrida.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones