ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| JESÚS MANUEL RAMOS RIVERA, LYDIA ESTHER CARABALLO CASTRO, Y LA SOCIEDAD DE BIENES GANANCIALES ENTRE ELLOS COMPUESTA<br><br>Parte Apelante<br><br>v.<br><br>SUCESIÓN NATALIA MÉNDEZ RIVERA, SYLVIA MÉNDEZ RIVERA, LUIS ANTONIO MÉNDEZ RIVERA<br><br>Parte Apelada | KLAN202300859 | *Apelación,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2022CV04373<br><br>Sobre:<br>Cumplimiento de Contrato |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2023.

Compareció ante este Tribunal la parte apelante, Jesús Manuel Ramos Rivera, Lydia Esther Caraballo Castro y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, "matrimonio Ramos Caraballo" o "Apelantes"), mediante recurso de apelación presentado el 25 de septiembre de 2023. Nos solicitaron la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), el 20 de julio de 2023, notificada el 24 del mismo mes y año.

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen apelado.

**I.**

El presente caso se originó el 25 de mayo de 2022, fecha en que el matrimonio Ramos Caraballo presentó "**Demanda**" sobre incumplimiento de contrato en contra de Natalia, Sylvia y Luis Antonio, todos de apellidos

Número Identificador
SEN2023_____

Méndez Rivera (en adelante, los "codemandados"). Sostuvieron los Apelantes que suscribieron con los codemandados un contrato de opción de compraventa el 14 de diciembre de 2017, sobre un bien inmueble localizado en el 1175 de la Calle Simón Bolívar, Barrio Buen Consejo del Municipio de San Juan, del cual estos últimos eran los dueños registrales. Añadieron que para la fecha del contrato era necesario modificar unos asuntos legales y registrales para finiquitar la transacción que no habían sido posible corregirlos. Así pues, solicitó el matrimonio Ramos Caraballo que se les ordenara a los Apelados a culminar dichos asuntos para poder concretar la compraventa del bien inmueble o que se ordenara al Alguacil del TPI a comparecer en sustitución de aquel codemandado que ignorara las órdenes del foro primario.

Tras varios trámites procesales, la codemandada Sylvia Méndez Rivera presentó, por conducto de su apoderada Sylvia Regina Ortiz (en adelante, la "Apelada"), "**Contestación a Demanda y Reconvención**". Alegó afirmativamente que el codemandado Luis Antonio Méndez Rivera no tenía ningún interés propietario sobre el inmueble en controversia y que las únicas dueñas registrales eran ella y la codemandada Natalia Méndez Rivera. Planteó, entre otras cosas, que nunca acordó ni por su cuenta ni por medio de un tercero la venta de la propiedad en controversia.

Mediante la "**Reconvención**" incoada expresó que era la única dueña de la propiedad que permanecía viva, toda vez que la codemandada Natalia Méndez Rivera había fallecido el 22 de julio de 2022, sin contraer matrimonio y sin dejar herederos (en adelante, la "Causante"). Alegó que el matrimonio Ramos Caraballo ocupaba el inmueble sin autorización y que por información y creencia éstos acordaron con la Sra. Carmen Ortiz Griffith que, a cambio de unos pagos, esta última les vendería la propiedad. Añadió que la señora Ortiz Griffith, quien es su hija, no tenía autorización para efectuar dicha transacción. Asimismo, planteó que dicha transacción se efectuó con la intención de apropiarse fraudulentamente de dinero que no le correspondía. Así pues, solicitó el desahucio de los Apelantes por ocupar la propiedad sin pagar canon de arrendamiento alguno. De igual forma,

reclamó que el matrimonio Ramos Caraballo le había ocasionado daños al inmueble estimados en $100,000.00 y que se había enriquecido injustamente en una cantidad no menor de $50,000.00.

El 20 de diciembre de 2022, los Apelantes presentaron "**Contestación a la Reconvención**" mediante la cual negaron las alegaciones presentadas por la Apelada. Posteriormente, el matrimonio Ramos Caraballo presentó escrito intitulado "**Enmienda a la Demanda**". A través del mismo, expuso que la codemandada Natalia Méndez Rivera había fallecido y que sus únicos herederos eran sus hermanos y codemandados, Sylvia y Luis Antonio Méndez Rivera. En vista de lo anterior, solicitó la enmienda a la "**Demanda**" para incluir a la Sucesión de Natalia Méndez Rivera como parte codemandada.

El 24 de enero de 2023, la Apelada presentó "**Contestación a Demanda Enmendada y Reconvención**". Reiteró que el codemandado Luis Antonio Méndez Rivera no tenía ningún derecho sobre la propiedad, puesto que a éste se le efectuó un pago global para saldar su derecho hereditario. Asimismo, mantuvo sus causas de acción originalmente esgrimidas en la "**Reconvención**". Luego de presentar su correspondiente alegación responsiva, los Apelantes presentaron "**Moción de Sentencia Sumaria**". Alegaron que la Causante decidió vender la propiedad en controversia y contrató al corredor de bienes raíces, Sr. Orlando Vázquez, para finiquitar la misma. Sostuvieron que le informaron su interés de comprar el inmueble, por lo que suscribieron un contrato y entregaron un depósito. Arguyeron que corrigieron unos asuntos legales para poder concretar la compraventa de la propiedad y que desde ese entonces esperaban por los codemandados para concluir la misma.

Añadieron que, mediante la *Sentencia* dictada en el caso núm. SJ2019CV04125, ventilado ante el Tribunal de Primera Instancia, Sala Superior de San Juan, se validó el contrato suscrito entre éstos y los codemandados y que dicho dictamen era final, firme e inapelable.[1]

---

[1] Al amparo de la Regla 201 de las de Evidencia, 32 LPRA Ap. VI, R. 201, tomamos conocimiento judicial del aludido caso. Del examen del expediente del Sistema Unificado de Manejo y Administración de Casos (SUMAC) se desprende que el referido pleito que interpusieron las Sras. Natalia y Sylvia, ambas de apellidos Méndez Rivera y la Sucesión

Plantearon que se les había entregado a los codemandados cantidades de dinero ascendentes a $40,400.00, los cuales fueron entregados a la señora Ortiz Griffith, quien presuntamente poseía un poder para efectuar la venta de la propiedad. Por tanto, sostuvo que procedía ordenar que se consumara la compraventa del inmueble, puesto que las partes suscribieron un contrato de compraventa vinculante.

Por su parte, la Apelada presentó "**Oposición a Moción presentada por los Demandantes Solicitando Sentencia Sumaria**". Expuso que la señora Ortiz Griffith carecía de autorización alguna para otorgar un contrato de opción de compraventa del inmueble y que el alegado acuerdo presentado por el matrimonio Ramos Caraballo en su solicitud de sentencia sumaria fue alterado, con el propósito de añadir una comparecencia que no está en el documento original. En vista de lo anterior, fue su contención que el contrato presentado carecía de validez y que los Apelantes no tenían ningún derecho a los remedios solicitados.

Evaluados ambos escritos, el 14 de abril de 2023 el TPI emitió *Resolución* mediante la cual declaró No Ha Lugar la moción de sentencia sumaria presentada por los Apelantes. Concluyó que los siguientes hechos estaban en controversia:

1. La validez del contrato de opción de compraventa.

2. En qué capacidad firmó la Sra. Carmen Ortiz Griffith el contrato de opción de compraventa.

3. Si la Sra. Ortiz Griffith tenía un poder para representar a Sylvia Méndez Rivera y Natalia Méndez Rivera para firmar el contrato de opción de compraventa.

4. Por concepto de qué la parte demandante realizó pagos a nombre de Natalia Méndez Rivera, Domus Bienes Raíces, Carmen Ortiz Griffith y Ángel Carrión Orlandi.

5. Si dichos cheques de gerente fueron cobrados.

---

de Yolanda Méndez Rivera en contra de Luis Antonio Méndez Rivera, como miembro de la Sucesión de Yolanda Méndez Rivera, para la división de la herencia de la Sra. Yolanda Méndez Rivera. De la *Sentencia* dictada en dicho caso no surge que el Tribunal de Primera Instancia, Sala Superior de San Juan, tuviera ante su consideración la validez del contrato de opción de compraventa que nos ocupa. Simplemente, dicho foro se limitó a efectuar las operaciones particionales de dicha Sucesión.

6. Si el codemandado, Luis Antonio Méndez Rivera, tenía un derecho propietario sobre el bien inmueble objeto de controversia y en el caso de que tenga un derecho propietario, si consintió a la venta del inmueble.

Así el trámite ante el foro *a quo*, la Apelada presentó "**Moción Enmendada de Sentencia Sumaria**".[2] Expresó que procedía la desestimación de la "**Demanda Enmendada**" por la vía sumaria, pues no existían hechos materiales que en derecho sostuvieran la reclamación presentada por el matrimonio Ramos Caraballo en contra de la parte demandada. Fundamentó su postura en lo siguiente: (1) que el alegado contrato de opción presentado había expirado por sus propios términos y no se cumplió; (2) que el alegado acuerdo de opción era nulo, pues la señora Ortiz Griffith no tenía ninguna autorización para firmar a favor de ningún miembro de la Sucesión; y (3) que, como cuestión de derecho, procedía la desestimación conforme lo disponía el Artículo 1232 del Código Civil de 1930, 31 LPRA sec. 3453, pues no existía un documento público que evidencie una venta en este caso.

El 3 de julio de 2023, el matrimonio Ramos Caraballo presentó "**Oposición a la Moción de Sentencia Sumaria Solicitada por la parte codemandada Sylvia Méndez**". Planteó que la Apelada había otorgado un poder en el que se describía expresamente el inmueble en controversia y que su argumento sobre la nulidad del contrato de opción de compraventa era contrario a los principios de buena fe y manos limpias. Asimismo, reiteró que la *Sentencia* del caso núm. SJ2019CV04125 advino final y firme y, por tanto, el contrato era válido. En vista de lo anterior, expuso que procedía que el TPI denegara la solicitud de sentencia sumaria radicada por la Apelada.

Tras la presentación de una réplica por parte de la Apelada, el 20 de julio de 2023 el foro apelado emitió *Sentencia Parcial*. Expresó el TPI que aun cuando en el contrato de opción de compraventa consta que la parte

---

[2] El 9 de junio de 2023, la Apelada presentó una "**Moción de Sentencia Sumaria**", la cual posteriormente enmendó al día siguiente.

vendedora lo es Natalia Méndez Rivera, Sylvia Méndez Rivera y Yolanda Méndez Rivera, ninguna de las titulares firmó la opción de compraventa. De hecho, añadió que para la fecha en que se firmó la opción de compraventa ya la Sra. Yolanda Méndez Rivera había fallecido y el aludido contrato constaba firmado por la señora Ortiz Griffith, quien no era titular de la propiedad inmueble ni tenía ningún poder para comparecer a nombre de las titulares. Ante ello, coligió que el contrato de opción de compraventa no tenía validez y no existía ninguna obligación entre el matrimonio Ramos Caraballo y los codemandados. En su consecuencia, declaró Ha Lugar la solicitud de sentencia sumaria y desestimó la "**Demanda**".

Inconformes, los Apelantes presentaron una solicitud de reconsideración, a la cual se opuso la Apelada. Mediante *Orden* de 25 de agosto de 2023, el foro primario denegó la solicitud de reconsideración. Aun insatisfechos, el matrimonio Ramos Caraballo presentó el recurso de apelación que nos ocupa mediante el cual le imputaron al TPI haber cometido los siguientes errores:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONFIRMAR UNA SENTENCIA SUMARIA DEJANDO SIN EFECTO UNA DETERMINACIÓN POR EL PROPIO TRIBUNAL DE LO QUE ES UNA CONTROVERSIA DE HECHO MEDULAR SIN LLEVAR A CABO DESCUBRIMIENTO DE PRUEBA.**

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONFIRMAR LA SENTENCIA SUMARIA PARCIAL AL DETERMINAR QUE ES UN CONTRATO DE COMPRAVENTA CUANDO ESTAMOS ANTE UN CONTRATO BILATERAL.**

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARA NULO UN CONTRATO OTORGADO POR UN CORREDOR DE BIENES RAÍCES Y NO PERMITIR EL DESCUBRIMIENTO DE PRUEBA**.

El 5 de octubre de 2023, emitimos *Resolución* mediante la cual paralizamos los procedimientos ante el TPI relacionados con la "**Reconvención**" pendiente de adjudicación. Así las cosas, el 25 de octubre de 2023 la Apelada presentó "**Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, resolvemos.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria.

A la luz de sus disposiciones, si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3. En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". SLG Szendrey-Ramos v. Consejo de Titulares, 184 DPR 133, 167 (2011). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal.

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Mejías _et al._ v. Carrasquillo _et al._, 185 DPR 288, 299 (2012); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 911-912 (1994). Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Roldan Flores v. M. Cuebas _et al._, 199 DPR 664, 676 (2018).

Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir

la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Roldán Flores v. M. Cuebas *et al.*, *supra*, pág. 677; Ramos Pérez v. Univisión, 178 DPR 200, 214-215 (2010).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitado a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Vera v. Dr. Bravo**,** *supra*, págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas,, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la denegatoria de una moción de sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los

hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**B.**[3]

Nuestro ordenamiento jurídico establece que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992. Las obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de éstas. Art. 1044 del Código Civil, 31 LPRA sec. 2994; López Torres v. González Vázquez, 163 DPR 275, 281 (2004); Mercado Quilichini v. U.C.P.R., 143 DPR 610, 627 (1997).

En Álvarez v. Rivera, 165 DPR 1, 17 (2005), nuestro más alto foro judicial estatal reiteró que en Puerto Rico rige el principio de la libertad de contratación, según el cual las partes contratantes pueden establecer los pactos, las cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372; S.L.G. Irizarry López v. S.L.G. García Cámara, 155 DPR 713, 724 (2001); Trinidad v. Chade, 153 DPR 280, 289 (2001); Plaza del Rey, Inc. v. Registrador, 133 DPR 188, 192-193 (1993); Casiano, Jr. v. Borintex Mfg. Corp., 133 DPR 127, 138 (1993).

En ese sentido, un contrato existe desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391. Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las

---

[3] Advertimos que somos conscientes de que el Código Civil de 1930 fue derogado mediante la aprobación de la Ley Núm. 55-2020, conocida como el "Código Civil de 2020". No obstante, esta última pieza legislativa en su Artículo 1812 establece lo siguiente: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación del caso, se utilizarán las disposiciones del Código Civil derogado.

condiciones esenciales para su validez". Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 3451. En lo relacionado con el objeto de los contratos, se dispone que "[e]l objeto de todo contrato debe ser una cosa determinada en cuanto a su especie". Art. 1225 del Código Civil de Puerto Rico, 31 LPRA sec. 3423. De otro lado, "la causa en los contratos es la razón o fin, o sea, el porqué de la obligación". S.J. Credit, Inc. v. Ramírez, 113 DPR 181, 186 (1982). Según apunta Manresa, la causa en los contratos no se refiere a las motivaciones iniciales que tuvieron los contratantes al momento de suscribir el contrato, sino al fin ulterior que los motivó para establecer las prestaciones y contraprestaciones de las cosas o servicios concernidos. J.M. Manresa, Código Civil Español, 6ta ed., 1967, T. VIII, Vol. 2, pág. 624.

Bajo el supuesto de la libertad de contratación contemplado en el Artículo 1207 del Código Civil, 31 LPRA sec. 3372, se reconoció jurisprudencialmente la figura del contrato de opción de compraventa, pues dicho contrato no estaba regulado en el derogado Código Civil. Este contrato se ha esquematizado como aquel acuerdo consensual en el que el promitente le concede al optante el derecho exclusivo a determinar si comprará determinado bien, cuya titularidad le pertenece al primero. S.L.G. Irizarry v. S.L.G. García, 155 DPR 713, 722 (2001). Se trata de un contrato preparatorio dirigido al otorgamiento de un contrato de compraventa. Rosa Valentín v. Vázquez Lozada, 103 DPR 796, 810 (1975). A pesar de que este tipo de contrato es uno consensual, se configura como uno unilateral, pues el optante no está obligado a comprar. S.L.G. Irizarry v. S.L.G. García, supra, pág. 722. Esto es contrario al caso del promitente, quien sí está compelido a vender el bien si el optante decide ejercer la opción. Íd. De ahí que se disponga que con el ejercicio de la opción por parte del optante no se perfecciona automáticamente un contrato de compraventa, "sino la obligación de parte del concedente de vender y de parte del optante de comprar la cosa objeto del contrato". Rosa Valentín v. Vázquez Lozada, supra, pág. 810.

Dicho de otro modo, el contrato de opción es el "'convenio por el cual una parte [llamada concedente, promitente u optatario] concede a la otra [llamada optante], por **tiempo fijo** y en determinadas condiciones, la facultad, **que se deja exclusivamente a su arbitrio,** de decidir respecto a la celebración de un contrato principal'". Atocha Thom McAn, Inc. v. Registrador, 123 DPR 571, 583 (1989) (énfasis en el original); P.D.C.M. Assoc. v. Najul Bez, 174 DPR 716, 724 (2008). Los requisitos esenciales de este contrato son los siguientes: (1) la concesión, de modo exclusivo, de una parte a la otra de la potestad decisoria sobre la celebración del contrato por el cual se opta; (2) la especificación de un plazo cierto; y (3) sin otra condición que no sea el juicio del optante. Mayagüez Hilton Corp. v. Betancourt, 156 DPR 234, 246 (2002). El requisito de optar radica en el perfeccionamiento de un contrato previamente delimitado que marca el final de la negociación. J. Puig Brutau, Fundamentos de Derecho Civil, Ed. Bosch, 1982, T. II, Vol. II, págs. 45-65.

**III.**

Primeramente, y en el ejercicio *de novo* que venimos compelidos a efectuar, hemos examinado desapasionada y mesuradamente la solicitud enmendada de sentencia sumaria presentada por la Apelada y de la correspondiente oposición radicada por el matrimonio Ramos Caraballo. Tras analizar la prueba documental que obra en el expediente ante nos y de los autos electrónicos ante el TPI, acogemos como nuestras las determinaciones de hecho desglosadas por la respetada jueza de instancia en la *Sentencia Parcial* apelada, a saber:

1.      El 14 de diciembre de 2017, las Partes Demandantes y la Sra. Carmen Ortiz Griffith suscribieron un contrato de opción de compraventa a favor de los Demandantes para la propiedad en la Calle Simón Bolívar #1175, Barrio Buen Consejo, San Juan, PR.

2.      El contrato de opción está firmado por Carmen Amanda Ortiz Griffith en su capacidad individual el 14 de diciembre de 2017.

3.      Carmen Ortiz Griffith no era dueña ni tenía ningún interés propietario en la propiedad en la Calle Simón Bolívar #1175, Barrio Buen Consejo, San Juan, PR.

4.      El contrato de opción no está firmado por ninguna de las dueñas de la propiedad; ni Sylvia Méndez Rivera ni

Natalia Méndez Rivera ni Yolanda Méndez Rivera firmaron el contrato de opción.

5. En el 2017, la Sra. Carmen Ortiz Griffith no tenía autoridad para firmar ningún documento a nombre de su madre Sylvia Méndez Rivera t/c/c Sylvia Méndez Ortiz ni para vender su propiedad.

6. En ningún momento en el 2017, tenía Carmen Ortiz Griffith autoridad o consentimiento para actuar a nombre de Natalia Méndez Rivera y/o Sylvia Méndez Rivera t/c/c Sylvia Méndez Ortiz.

7. El contrato de opción de compraventa dispone un término de la opción es de ciento ochenta (180) días para pagar el precio de ochenta mil dólares ($80,000.00).

8. El contrato de opción expiró según sus propios términos el 12 de junio del 2018.

9. El contrato de opción de los Demandantes también dispone que: "Si no se efectuase la compra dentro del tiempo de esta opción, por la razón que sea, la parte compradora estará incumpliendo el contrato de opción, razón por la cual la parte compradora perderá la suma entregada como precio de opción…".

10. Los Demandantes nunca efectuaron la compraventa dentro del término establecido de 180 días.

Establecido lo anterior, pasamos a disponer de la controversia planteada en el tercer señalamiento de error. Veamos.

Sostiene el matrimonio Ramos Caraballo que el TPI incidió al decretar la nulidad del contrato de opción de compraventa que suscribieron con la Apelada y con Natalia y Yolanda, ambas de apellidos Méndez Rivera (en adelante, las "titulares"). A esos efectos, plantea que el foro primario erró al no presumir la validez de dicha transacción, por haber participado un corredor de bienes raíces en la misma. Asimismo, expone que el contrato en controversia fue firmado por la señora Ortiz Griffith mediando un mandato de la Apelada y de su tía que fue ratificado a través de un Poder otorgado en el Estado de California en el año 2018.

Es norma trillada en nuestra jurisdicción que la validez de todo contrato depende de la concurrencia de tres (3) requisitos fundamentales, a saber: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. **La existencia o no de estos elementos se determina al momento de perfeccionar el contrato**. Por ello, es nulo todo negocio jurídico en el que

el objeto, la causa o el consentimiento son inexistentes. Es, pues, evidente que al momento en que se analiza la validez o no de cualquier pacto contractual, es indispensable asegurarnos de la concurrencia de todos estos requisitos.

El asunto medular que se plantea en el señalamiento de error que atendemos se centra en la existencia o no del consentimiento de las titulares para suscribir el contrato de opción en controversia. El examen de todas las piezas documentales que se unieron a la solicitud enmendada de sentencia sumaria presentada por la Apelada conduce a la conclusión de que la señora Ortiz Griffith firmó el aludido contrato sin contar con un poder o autorización válida por parte de quienes ostentan el derecho de efectuar actos de disposición de dicho bien inmueble, a saber: las titulares.

Adviértase que los Apelantes fundamentan su contención en una supuesta presunción de corrección de los negocios jurídicos en los que intervienen corredores de bienes raíces y en un alegado mandato que presuntamente obtuvo la señora Ortiz Griffith de su madre y de su tía. En cuanto a la presunción, el matrimonio Ramos Caraballo falló en hacer alusión a fuente legal alguna para sustentar su posición; mientras que, en cuanto al argumento relacionado con el mandato ratificado, presentó copia de un Poder otorgado en el año 2018. Es decir, aún si diéramos por válido dicho documento, el mismo se otorgó en fecha posterior a la que se suscribió la opción de compraventa. Sobre este particular, coincidimos con la Apelada a los efectos de que dicho Poder no convierte en válida la actuación unilateral de la señor Ortiz Griffith de firmar por su cuenta el contrato de opción antes de que se otorgara el Poder que utilizó como prueba documental para sustentar sus planteamientos.

Lo anterior, implica que el contrato nunca produjo efecto jurídico alguno, puesto que la señora Ortiz Griffith no era la dueña del inmueble, ni tampoco contaba con un poder válido o autorización de ninguna índole para concretar dicha transacción. Entiéndase, no medió el consentimiento de las personas llamadas por nuestro ordenamiento legal a concretar este tipo de negocio jurídico. Esta es la norma, indistinto del tipo de contrato de que se

14

trate y de la importancia que tenga para las partes contratantes. Rodríguez Ramos, *et al.* v. ELA, *et al.*, 190 DPR 448, 456, (2014); De Jesús González v. A.C.*,* 148 DPR 255, 264 (1999). Es decir, el contrato que nos ocupa no es susceptible de ser convalidado posteriormente, pues no medió el consentimiento de quienes estaban autorizados por ley a suscribirlo.

Las titulares eran dueñas en común pro indiviso sobre el bien en controversia y, como tal, para poder efectuar actos dispositivos se hacía indispensable que mediara el consentimiento unánime de todas al momento de concretar la opción. Así pues, coincidimos con el TPI a los efectos de que el contrato de opción en controversia no tiene validez alguna y no existe una obligación entre el matrimonio Ramos Caraballo y la Apelada que los primeros puedan reclamar.

Habiendo concluido lo anterior, se hace innecesaria la discusión de los restantes planteamientos de error señalados en el recurso, pues todos están cimentados en una obligación contractual que no tiene efecto legal alguno.

Finalmente, concluimos que el recurso ante nuestra consideración no es frívolo, por lo que denegamos la solicitud de la Apelada para que se le impongan honorarios por temeridad al matrimonio Ramos Caraballo, al amparo de la Regla 85 (B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada, se ordena la continuación de los procedimientos ante el TPI, en cuanto a la "**Reconvención**" presentada, y se declara No Ha Lugar la solicitud interpuesta por la Apelada para la imposición de honorarios de abogado al matrimonio Ramos Caraballo, de conformidad con la Regla 85 (B) del Reglamento de este Tribunal, *supra*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones