Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| FIDEICOMISO ALFREDO Y ESTHER RAMÍREZ DE ARELLANO Y OTROS<br><br>Demandantes-Apelantes<br><br>Vs.<br><br>BANCO POPULAR DE PUERTO RICO Y OTROS<br><br>Demandados-Apelados | KLAN202500530 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2022CV09448<br><br>Sala: 503<br><br>Sobre: DAÑOS Y PERJUICIOS POR INCUMPLIMIENTO DE CONTRATO |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparece el Fideicomiso Alfredo y Esther Ramírez de Arellano, representado por sus beneficiarios, Josefina Ramírez de Arellano (en adelante, señora Ramírez de Arellano) y Georgina Paredes Despradel (en adelante, señora Paredes Despradel), por sí y en representación de la Sucesión de Alfredo Carlos Ramírez de Arellano del Valle (en adelante, la Sucesión) (en conjunto, parte apelante), mediante un recurso de *Apelación*, para solicitarnos la revisión de una *Sentencia Parcial* emitida y notificada el 13 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI).[1] Mediante el dictamen apelado, el foro primario desestimó parcialmente la *Demanda* presentada en contra de Banco Popular de Puerto Rico (en adelante, Banco Popular o parte apelada) tras entender que tanto la señora Paredes Despradel como la Sucesión carecen de legitimación activa para reclamar un alegado

---

[1] Apéndice 1 de la *Apelación,* a las págs. 1-28; Entrada 82 SUMAC.

incumplimiento de fiducia por parte de Banco Popular y que la causa de acción en reclamo de las pérdidas sufridas por ciertas inversiones no es imputable a la parte apelada.

Por los fundamentos que expondremos, se *confirma* la *Sentencia Parcial* apelada.

**-I-**

El presente caso tiene su génesis el 26 de octubre de 2022, cuando la parte apelante presentó una *Demanda* por incumplimiento de contrato, y daños y perjuicios en contra de Banco Popular, Popular Securities LLC. (en adelante, Popular Securities) y Gloria Ramírez de Arellano Del Valle, quien fue incluida como demandada por ser parte con interés.[2] En esencia, arguyó que el 14 de octubre de 1991, Alfredo Ramírez de Arellano y Esther Del Valle establecieron, mediante la Escritura Núm. 96, otorgada ante el notario Luis Raúl Irizarry Cuebas, el Fideicomiso Alfredo y Esther Ramírez de Arellano, para su beneficio propio.

Asimismo, nombraron a Alfredo Carlos Ramírez de Arellano Del Valle, a la señora Ramírez de Arellano Del Valle y a Gloria Ramírez de Arellano Del Valle como beneficiarios sustitutos de los bienes fideicomitidos no consumidos al fallecimiento de ambos fideicomitentes. Del mismo modo, designaron a Banco Santander de Puerto Rico (en adelante, Banco Santander) como fiduciario para que recibiera los fondos fideicomitidos y los administrara conforme a los términos establecidos en el contrato de fideicomiso. Sostuvo que, posteriormente, Banco Popular se sustituyó como fiduciario en el lugar de Banco Santander.

Indicó que el 20 de junio de 2013, una oficial de Banco Popular les informó a los beneficiarios mediante carta que la institución financiera deseaba invertir $1,014,751.85 en bonos del

---

[2] Apéndice 13 de la *Apelación*, a las págs. 753-763; Entrada 1 SUMAC.

Gobierno de Puerto Rico o corporaciones públicas que habían sido degradados por casas acreditadoras. Lo anterior, en contravención con el contrato de fideicomiso que, según esgrimió la parte apelante, dispone que el fiduciario, en consulta con los fideicomitentes, podrá invertir en aquellos valores que cuenten con una clasificación Triple A (AAA) o estuvieren garantizados por el Gobierno de Estados Unidos de América.

En adición, aunque no precisó en qué fecha, adujo que Banco Popular compró $1,030,000.00 en bonos de la PR Sales Tax Financing Corp. (en adelante, Bonos COFINA) por un costo de inversión de $998,355.00, los cuales no tenían una clasificación Triple A (AAA). Añadió que el 3 de noviembre de 2017, Banco Popular vendió los antedichos valores por $485,900.00 e invirtió el producto de dicha venta en un certificado de depósito por $487,492.75. Asimismo, que la entidad bancaria compró cincuenta mil (50,000) unidades del First PRAAA TARGET MAT FD I (en adelante, Fondo Mutuo) por el valor par de $500,000.00. Sostuvo que, para el 31 de enero de 2018, dichos valores tenían un valor en el mercado de $378,000.00, para una pérdida no realizada de $121,500.00.

Basado en lo anterior, arguyó que el Banco Popular faltó a su deber de fiducia e incurrió en mala fe por adquirir los instrumentos financieros antedichos en contravención con las disposiciones del contrato de fideicomiso toda vez que ninguno contaba con clasificación Triple A (AAA) ni estaba garantizado por el Gobierno Federal. De igual manera, que Banco Popular faltó a su obligación contractual como fiduciario de salvaguardar los activos fideicomitidos al invertir en el Fondo Mutuo, ya que esa inversión tiene un alto riesgo de perder el principal.

Además, sostuvo que, por información y creencia, entendía que Banco Popular incurrió en un conflicto de intereses en las referidas transacciones. Ello por cuanto expuso que la institución

bancaria, a través de sus subsidiarias, como Popular Securities, actuó como suscriptor y co-emisor de los fondos cuyas acciones adquirió con los bienes fideicomitidos. Por todo lo anterior, solicitó que el TPI determinara que Banco Popular faltó a su deber fiduciario y la condenara al reembolso de las pérdidas realizadas y no realizadas en los fondos del fideicomiso, ascendentes a $700,00.00 o, en la alternativa, a la devolución del principal invertido en los valores que no cumplen con las disposiciones del contrato de fideicomiso junto con los dividendos e intereses dejados de percibir.

El 13 de enero de 2023, la parte apelada presentó una *Moción de Desestimación de Banco Popular* en la que solicitó al foro primario que desestimara la demanda presentada al amparo de la Regla 10.2 (5) de Procedimiento Civil, *infra*.[3]

En esencia, arguyó que la parte apelante carecía de legitimación activa para incoar la demanda, conforme al contrato de fideicomiso. Ello toda vez que la escritura era clara en cuanto a que la Sucesión no podía ser beneficiaria del fideicomiso mientras las beneficiarias Gloria y Josefina Ramírez de Arellano Del Valle estuvieran vivas, y que la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales compuesta por ésta y Alfredo Carlos Ramírez de Arellano no tienen derecho a los bienes fideicomitidos por estos ser propiedad del fideicomiso, ni derecho a los frutos generados de éste por ser propiedad privativa de Alfredo Carlos Ramírez de Arellano, quien falleció en 2018.

En adición, que la reclamación con respecto a la adquisición de los Bonos COFINA y la inversión en el Fondo Mutuo prescribió al amparo del Código de Enjuiciamiento Civil. Igualmente, que la reclamación por la compra en el Fondo Mutuo está prescrita, al amparo del Código Civil de 1930, y no procede en contra de Banco

---

[3] Apéndice 12 de la *Apelación*, a las págs. 608-751; Entrada 15 SUMAC.

Popular porque ésta no realizó la compra, sino que fue hecha por Banco Santander, el fiduciario anterior. Ello toda vez porque, según sostuvo, el Fondo salió al mercado en junio de 2004, y el certificado de acciones correspondiente a la inversión en éste tiene una fecha de 17 de marzo de 2005. Por consiguiente, esgrimió que la inversión tuvo que haber ocurrido necesariamente entre junio de 2004 y marzo de 2005, antes de que Banco Popular adviniera como fiduciario en 2012.

El 10 de abril de 2023, la parte apelante presentó una *Oposici[ó]n a Moci[ó]n [de] Desestimaci[ó]n de BPPR*.[4] En síntesis, sostuvo que la señora Paredes Despradel y la Sucesión tenían derecho a los ingresos dejados de percibir pues, al momento de la muerte de Alfredo Carlos Ramírez de Arellano, el derecho a recibir los ingresos dejados de percibir había entrado a su patrimonio, y el derecho a incoar una acción para reclamar dichos ingresos, forma parte de su caudal relicto.[5] En adición, que la Sucesión sí se considera fideicomisaria, conforme a la propia escritura de fideicomiso, por lo que posee legitimación activa.

Por otro lado, expuso que la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales que compuso con Alfredo Carlos Ramírez de Arellano tienen derecho al 50 % de los ingresos percibidos y dejados de percibir provenientes de los bienes fideicomitidos por ser frutos de carácter ganancial, aunque el derecho a recibir los ingresos del fideicomiso sea de naturaleza privativa. Asimismo, que en el presente caso aplica la Ley Núm. 219 de 31 de agosto de 2012, según enmendada, mejor conocida como

---

[4] Apéndice 8 de la *Apelación*, a las págs. 404-434; Entrada 37 SUMAC.

[5] Cabe destacar que, el 5 de octubre de 2018, mientras Alfredo Carlos Ramírez de Arellano estaba en vida, la señora Despradel, en calidad de tutora de éste y en representación de la Sociedad Legal de Bienes Gananciales compuesta por ambos, presentó una demanda con el alfanumérico SJ2018CV08540 en contra de Banco Popular por incumplimiento contractual y para cuestionar las adquisiciones de los Bonos COFINA y el Fondo Mutuo. Dicha acción fue desestimada con perjuicio por el TPI por falta de parte indispensable mediante una sentencia que, posteriormente, fue modificada en el alfanumérico KLAN202000342 por un panel hermano de esta Curia para disponer que la desestimación fuera sin perjuicio.

la *Ley de Fideicomisos*, 32 LPRA sec. 351 *et seq.* (en adelante, Ley de Fideicomisos), la cual derogó los artículos 834-874 del Código Civil de 1930, *infra*, que regulaban la figura del fideicomiso.

Tras varios trámites procesales, entre los que se incluye que la parte apelante enmendó la demanda presentada, el 14 de junio de 2023, Popular Securities presentó una *Moción de Sentencia Sumaria de Popular Securities, LLC.*[6] Esencialmente, arguyó que no existía una relación contractual entre ésta y la parte apelante, por lo que no procedía la causa de acción por incumplimiento contractual en su contra. Asimismo, que no tuvo interacción con los activos fideicomitidos toda vez que la división encargada de administrar fideicomisos es una división de Banco Popular y no de Popular Securities. Por consiguiente, sostuvo que procedía la disposición sumaria de la causa de acción presentada en su contra. Es preciso resaltar que, tras varios incidentes, la referida moción dispositiva quedó sometida sin oposición ante la consideración del foro primario.[7]

Ese mismo día, Banco Popular presentó una *Moción de Desestimación [de] Demanda Enmendada de Banco Popular.*[8] En síntesis, reiteró que, en el presente caso, la parte apelante carecía de legitimación activa y que las causas de acción estaban prescritas al amparo del Código Civil de 1930 y el Código de Enjuiciamiento Civil. Además, que aplicaba por analogía el término prescriptivo de dos (2) años establecido por la Ley Núm. 60 de 18 de junio de 1963, según enmendada, mejor conocida como la *Ley Uniforme de Valores*, 10 LPRA sec. 881 *et seq.* (en adelante, "Ley Uniforme de Valores") para las reclamaciones relacionadas con transacciones de valores. Asimismo, que la parte apelante había incurrido en incuria toda vez

---

[6] Apéndice 6 de la *Apelación*, a las págs. 360-385; Entrada 49 SUMAC.
[7] Entrada 62 SUMAC.
[8] Apéndice 5 de la *Apelación*, págs. 72-359; Entrada 50 SUMAC.

que, de ser admitidas sus alegaciones, estaba enterada de las alegadas violaciones por parte de Banco Santander y Banco Popular a las disposiciones del contrato de fideicomiso.

En adición, reiteró que la reclamación por la inversión del Fondo Mutuo no era imputable al Banco Popular porque la referida transacción fue realizada por Banco Santander. Por último, negó que tanto Banco Popular como Popular Securities LLC. fueran suscriptores de los Bonos COFINA, sino Banco Santander.

Por su lado, el 9 de agosto de 2023, la parte apelante presentó una *Oposici[ó]n a Segunda Moci[ó]n [de] Desestimaci[ó]n de BPPR y Solicitando Anotaci[ó]n de Rebeld[í]a.*[9] En esencia, planteó argumentos similares a los aducidos en su escrito en oposición a la primera solicitud de desestimación de la parte apelada y negó la aplicabilidad de la Ley Uniforme de Valores toda vez que la relación entre las partes es de fiduciario-beneficiario y la parte apelada no fungía como corredor de inversiones para con la parte apelante.

El 7 de noviembre de 2023, Banco Popular presentó una *Solicitud de Autorización para Presentar Réplica* en la que anejó una *Réplica de Banco Popular a Oposición de Demandantes a Moción de Desestimación,* tras no presentar la réplica dentro del término permitido por las Reglas de Procedimiento Civil.[10] Allí, reiteró los planteamientos esbozados en apoyo a su solicitud dispositiva.

El 27 de noviembre de 2023, el TPI celebró una vista sobre el estado de los procedimientos, cuya *Minuta* obra en el expediente ante nos.[11] Durante ésta, el foro primario hizo constar que la moción de desestimación, su oposición y la moción de sentencia sumaria, quedaban pendientes por adjudicar.

---

[9] Apéndice 4 de la *Apelación,* págs. 52-71; Entrada 58 SUMAC.
[10] Apéndice 3 de la *Apelación,* a las págs. 32-51; Entrada 70 SUMAC.
[11] Apéndice 2 de la *Apelación,* a las págs. 29-31; Entrada 75 SUMAC.

El 13 de mayo de 2025, el foro *a quo* emitió y notificó una *Sentencia Parcial*.[12] En ésta, dictaminó que el fideicomiso fue constituido de manera que, mientras uno de los fideicomisarios esté vivo, será él o ella quien tenga derecho a recibir los beneficios generados por el fideicomiso. Siendo así, los herederos del fideicomisario fallecido, Alfredo Carlos Ramírez de Arellano, no tienen derecho a recibir la participación que recibió en vida. Sin embargo, sostuvo que la Sucesión tenía derecho a continuar con las causas de acción que éste presentó en vida toda vez que dichas acciones forman parte de su caudal relicto.

Por consiguiente, resolvió que la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales que formó con su esposo, no satisfacen el requisito de legitimación activa por no ser beneficiarios del fideicomiso.

Sobre los argumentos de que la acción estaba prescrita, resolvió que la Ley Uniforme de Valores es un estatuto específico y de alcance limitado a las causas de acción establecidas en esa ley. Por ello, indicó que sus disposiciones no son de aplicación al presente caso. A su vez, entendió que era de aplicación el plazo prescriptivo de quince (15) años establecido para las acciones personales sin término prescriptivo del artículo 1865 del Código Civil de 1930, 31 LPRA ant. sec. 5294.

Siendo así, resolvió que los términos prescriptivos en el presente caso comenzaron a transcurrir en 2013, cuando se adquirieron los bonos en controversia, y en 2005, cuando se invirtió en el Fondo Mutuo. No obstante, la demanda, originalmente incoada en 2018, tuvo el efecto de interrumpir los antedichos plazos.

Adicionalmente, entendió que las pérdidas sufridas por la inversión en el Fondo Mutuo no eran imputables a Banco Popular,

---

[12] Apéndice 1 de la *Apelación*, a las págs. 1-28; Entrada 82 SUMAC.

por no haber sido hecha por ésta. Sin embargo, sostuvo que procedía continuar con el reclamo en contra de la parte apelante por la adquisición de los Bonos COFINA.

Además, dictó que la Ley de Fideicomisos no era aplicable al presente caso, sino que el fideicomiso se encuentra regulado por el Código Civil de 1930. Ello por cuanto la Ley de Fideicomisos, aunque derogó los artículos del Código Civil de 1930 que regulan el fideicomiso, no contiene ninguna disposición que establezca su carácter retroactivo.

Por ello, desestimó la causa de acción por la inversión en el Fondo Mutuo, la causa de acción de la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales y mantuvo las causas de daños y perjuicios por incumplimiento de contrato y violación del deber de fiducia en lo que concierne a la Sucesión, así como aquellas relacionadas a la inversión en los Bonos COFINA.

Inconforme, el 11 de junio de 2025, la parte apelante acude ante nos mediante recurso de *Apelación* y señala al TPI por la comisión de los siguientes errores:

a. Erró el TPI al determinar que no procede distribuir a la Sucesión el tercio del corpus y los intereses que pertenecían a Alfred al momento de su muerte teniendo que esperar hasta la muerte de Gloria y Josefina para su distribución.

b. Erró el TPI al desestimar la reclamación de Georgina por entender que no tenía legitimación activa por no ser beneficiaria del Fideicomiso, privándola del 50 % de los frutos que en vida dej[ó] de percibir Alfred[,] los que[,] siendo privativos[,] se consideran gananciales, violando así el debido procedimiento de ley[,] tanto en su vertiente procesal como sustantiva[,[ al privar a Georgina de su día en corte, y privarla de su propiedad,

c. Erró el TPI al desestimar la reclamación en cuanto a las pérdidas sufridas por el Fideicomiso por la violación al deber de fiducia de BPPR en torno al First PRAAA TARGET MAT FD I[,] concluyendo que dicha pérdida no se le puede imputar a BPPR porque no compró el bono, abstrayéndose el Tribunal del lenguaje de la escritura y de las obligaciones del fiduciario y la doctrina en torno a las alegaciones alternativas y la relativa a la

desestimación de reclamaciones bajo la Regla 10.2 de Proc. Civ. de 2009.

d. Si erró el TPI al determinar que la ley que aplica al caso es el Cc de 1930 [sic].

El 3 de julio de 2025, Banco Popular compareció mediante *Alegato de la Parte Apelada Banco Popular de Puerto Rico*. Con el beneficio de la comparecencia de ambas partes, procederemos a disponer del presente recurso.

*-II-*

*-A-*

En general, los tribunales tienen la obligación y responsabilidad de decidir los casos que se le presentan ante su consideración, incluso aquellos que con gusto evitaría. No obstante, como doctrina de autolimitación y de prudencia en el ejercicio del Poder Judicial, los tribunales solo pueden resolver aquellas controversias que sean justiciables. *Hernández Montañez v. Parés Alicea,* 208 DPR 727, 738 (2022). El concepto de justiciabilidad "impone el deber de examinar si los casos que traban una controversia de índole constitucional cumplen con determinados e indispensables requisitos previo a una expresión". *Noriega v. Hernández Colón,* 135 DPR 406, 420 (1994). Lo anterior, pues, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *ELA v. Aguayo,* 80 DPR 552, 558-559 (1958). Por consiguiente, para poder ejercer de forma válida nuestra facultad de interpretar la ley, es necesario que el caso presente una controversia auténtica, definida y concreta, dentro de un contexto adversativo. De lo contrario, procede la desestimación del recurso presentado porque, como no existe una controversia real entre los litigantes, el tribunal debe abstenerse de adjudicarlo.

El Tribunal Supremo de Puerto Rico ha resuelto que una controversia no es justiciable en las siguientes circunstancias, a saber: (1) cuando la cuestión a resolver es una cuestión política; (2) cuando el pleito no está maduro; (3) cuando, después de iniciado el pleito, hechos posteriores lo convierten en académico; (4) cuando lo que se procura obtener es una opinión consultiva; y **(5) cuando las partes no poseen legitimación activa para incoar la acción presentada**. *Noriega v. Hernández Colón, supra,* pág. 421.

Nuestra jurisprudencia define la legitimación activa como "la capacidad que se requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante." *Hernández, Santa v. Srio. De Hacienda,* 208 DPR 727, 739 (2022). Para satisfacer dicho concepto, la parte promovente tiene que demostrar: (1) que sufrió un daño claro y palpable; (2) que el daño es real, inmediato y preciso, no abstracto o hipotético; (3) la existencia de un nexo causal entre el daño y la acción que se ejercita; y, (4) que la causa de acción se ejerce al palio de la Constitución o de una ley. *Fund. Surfrider y otros v. ARPe,* 178 DPR 563, 572 (2010).

Se ha indicado que la legitimación activa significa que, como parte demandante, debe figurar aquella persona a favor de quien el derecho sustantivo establece el derecho objeto de la demanda. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 5ta ed., Lexis Nexis de Puerto Rico, 2010, sec.1002, pág. 106.

Así, el requisito de legitimación activa tiene su génesis en la doctrina de justiciabilidad y su función principal responde a asegurar que los tribunales atiendan aquellos asuntos que presentan casos o controversias que les permitan conceder remedios apropiados. *CRIM v. Méndez Torres,* 174 DPR 216, 225 (2008). Igualmente, la legitimación activa orbita, principalmente, en torno a la parte que promueve la acción y, en segundo lugar, a las

cuestiones a adjudicarse. *Col. Ópticos de PR v. Vani Visual Center*, 124 DPR 559, 564 (1989) (citando a *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 723 (1980)).

Cónsono con lo anterior, "[l]a doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de los mismos." *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007).

En armonía con lo que antecede, la jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. *Cobra Acquisitions, LLC v. Municipio de Yabucoa y otros*, 210 DPR 384, 394 (2022); *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). Reiteradamente, se ha expresado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción y no tenemos discreción para asumir jurisdicción donde no la hay. *Íd.* De igual manera, es conocido que la ausencia de jurisdicción no puede ser subsanada por las partes. *Pueblo v. Ríos Nieves, supra*, pág. 274; *Pérez Soto v. Cantera Pérez, Inc., et al.*, 188 DPR 98, 105 (2013). Por consiguiente, las cuestiones relacionadas a la jurisdicción de un tribunal son privilegiadas y deben atenderse y resolverse con preferencia a cualquier otra. Cuando un tribunal emite una sentencia sin tener jurisdicción sobre las partes o la materia, su dictamen es uno inexistente o *ultravires*. *Íd.* pág. 105. Por ello, al carecer de jurisdicción o autoridad para considerar un recurso, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. *Íd.*

*-B-*

La Regla 10 de Procedimiento Civil, *supra*, permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda, estas siendo: (1) una moción de desestimación; (2) una moción para solicitar una exposición más definida; y (3) una moción eliminatoria. 32 LPRA Ap. V, R. 10.2, 10.4 y 10.5 respectivamente.

La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R. 10.1; *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043,1065 (2020). **No obstante, en aras de evitar dilaciones innecesarias, la parte que presente una moción al amparo de la regla deberá acumular en esta todas las mociones y defensas a las que entienda que tiene derecho y que la regla contempla**. 32 LPRA Ap. V, R. 10.7. (Énfasis suplido).

Por su parte, la Regla 10.2 de las de Procedimiento Civil, *supra,* permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2 (5). La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8; *Conde Cruz v. Resto Rodríguez, supra*, pág. 1066. (Énfasis suplido).

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 84 (2023); *Cobra Acquisitions, LLC v. Municipio de*

*Yabucoa, supra,* pág. 396. Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security Police, Inc. v. Dorado, supra,* pág. 84; *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

Para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, *supra,* el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. V. Jta. Dir. Firstbank,* 193 DPR 38, 49 (2015). Así pues, los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida. *Eagle Security Police, Inc. v. Dorado, supra,* pág. 84. Asimismo, el Tribunal Supremo de Puerto Rico resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos. *Comisión v. González Freyre,* 211 DPR 579,614-615 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa, supra,* págs. 400-401.

### -C-

El fideicomiso puertorriqueño es una institución con características específicas. Incorpora los principios del *trust* anglosajón e intenta armonizarlos con la tradición civilista que impera en nuestro ordenamiento jurídico. *TOLIC v. Febles Gordián,* 170 DPR 804, 811 (2007); *Dávila v. Agrait,* 116 DPR 549, 554 (1985). Así, es una "figura híbrida," por lo que es difícil precisar y armonizar sus contornos civilistas y anglosajones. C.T. Lugo Irizarry, *El fideicomiso en Puerto Rico: un híbrido jurídico ante el futuro,* First Book Publishing of PR, 1996, pág. 15.

El Código Civil,[13] en su Artículo 834, define el fideicomiso como "un mandato irrevocable a virtud del cual se transmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos conforme le ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario." 31 LPRA ant. sec. 2541. En adición, el Artículo 835 de la misma ley dispone que el fideicomiso puede constituirse por testamento, para que su efecto sea *mortis causa*, o por acto *inter vivos*. 31 LPRA ant. sec. 2542. No obstante, en el caso del fideicomiso *inter vivos*, tiene que ser constituido en escritura pública. 31 LPRA ant. sec. 2543.

Por ser pertinente al caso ante nos, cabe destacar que el Artículo 862 del Código Civil limita la responsabilidad del fiduciario respecto a la ejecución del fideicomiso. Específicamente, el aludido articulado expresa que "[e]l fiduciario quedará encargado de la ejecución del fideicomiso desde el instante en que lo acepte, y **no será responsable de ninguna equivocación de criterio, de ningún error de hecho o de derecho, ni de ningún acto u omisión, a excepción de su propio descuido voluntario o negligencia manifiesta**." 31 LPRA ant. sec. 2569 (Énfasis suplido).

Toda vez que la figura del fideicomiso bajo el Código Civil se asemeja a una forma de contrato, es preciso recordar que, en el ámbito contractual, es doctrina reiterada que los contratos deben ser interpretados de tal modo que prevalezca la intención de las partes contratantes. En particular, el Código Civil dispone que "[s]i los términos de un contrato son claros y no dejan duda sobre la

---

[13] Debido a que los hechos ocurrieron antes del 28 de noviembre de 2020, hacemos constar que sería de aplicación el Código Civil de 1930, el cual fue derogado por la Ley Núm. 55-2020, también conocida como el "Código Civil de 2020". No obstante, esta última pieza legislativa en su Artículo 1812 establece lo siguiente: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos del presente caso, se hará referencia a las disposiciones del Código Civil derogado.

intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquellas." 31 LPRA ant. sec. 3471.

Por último, cabe destacar que, tras varias décadas, se aprobó la Ley de Fideicomisos, 32 LPRA sec. 3351, *et seq.* Ésta derogó las disposiciones del Código Civil, y consagró la figura del fideicomiso bajo una sola pieza legislativa.

### *-D-*

Nuestro ordenamiento jurídico establece que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia." 31 LPRA ant. sec. 2992; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Conforme al Código Civil, para que un contrato sea válido, éste debe contener el consentimiento de los contratantes, un objeto cierto y causa de la obligación que se establezca. 31 LPRA ant. sec. 3391. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato. 31 LPRA ant. sec. 3401. Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan. Siendo así, una vez perfeccionado dicho contrato, éste tiene fuerza de ley entre las partes. *López Torres v. González Vázquez*, 163 DPR 275, 281 (2004); *Mercado Quilichini v. UCPR,* 143 DPR 610, 627 (1997).

En nuestra jurisdicción opera el principio de libertad de contratación. *Álvarez v. Rivera,* 165 DPR, 1, 17 (2005); *Trinidad v. Chade,* 153 DPR 280, 289 (2001). El Artículo 1207 del Código Civil establece que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA ant. sec. 3372; *VDE Corporation v. F&R Contractors,* 180 DPR

21, 33 (2010); *Plaza del Rey, Inc., v. Registrador*, 133 DPR 188, 192-193 (1993). Por tanto, los contratos serán obligatorios, cualquiera que sea la forma que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. 31 LPRA ant. sec. 3451. A su vez, es preciso señalar que, cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. 31 LPRA ant. sec. 3471.

El Artículo 1054 del Código Civil dispone que quedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier otro modo contravinieren a tenor de aquellas. 31 LPRA ant. sec. 3018. *Cruz, López v. Casa Bella y otros*, *supra*, pág. 998. En consecuencia, "cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual". *Soc. de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998). Esta clase de acción, llamada *ex contractu*, que procede del referido articulado, se refiere a "actos u omisiones voluntarios que conllevan la inobservancia de obligaciones anteriormente acordadas." *Maderas Tratadas v. Sun All.*, 185 DPR 880, 909 (2012).

Sabido es que "[l]os contratos sólo producen efecto entre las partes que los otorgan[.]" 31 LPRA ant. sec. 3374. Es por ello que "[l]as acciones *ex contractu* solo pueden ser ejercidas por una parte contratante en contra de la otra". *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 57 (2015).

-*E*-

Finalmente, es menester destacar que, según lo establece el Código Civil, son bienes gananciales, entre otros, "[l]os frutos, rentas e intereses percibidos o devengados durante el matrimonio,

procedentes de los bienes comunes **o de los peculiares de cada uno de los cónyuges**." Artículo 1301 del Código Civil, 31 LPRA ant. sec. 3641 (énfasis nuestro).

Por un lado, nuestro Más Alto Foro judicial ha definido los **bienes gananciales** como "aquellos beneficios y ganancias obtenidas durante la vigencia del matrimonio, a título oneroso, **provenientes del trabajo o industria de los cónyuges y del producto de sus bienes propios**." *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 978 (2010) (citando a R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Ed. UIA, 19971, Vol. 1, pág. 321) (énfasis nuestro).

En cambio, y pertinente al caso ante nos, "[s]on **bienes propios de cada uno de los cónyuges**: (1) Los que aporte al matrimonio como de su pertenencia. (2) Los que adquiera durante él, por título lucrativo, sea por donación, legado o herencia." Artículo 1299 del Código Civil, 31 LPRA ant. sec. 3631 (énfasis nuestro). Cónsono con lo anterior, los frutos devengados durante el matrimonio son bienes gananciales, pero dichos frutos tienen que derivar de bienes comunes o de bienes peculiares de cada uno de los cónyuges.

### -*III*-

En el presente recurso, la parte apelante esboza cuatro (4) señalamientos de error que, según sostiene, cometió el foro *a quo*. Primeramente, señala que el foro de instancia erró al resolver que la sucesión de Alfredo Carlos no tiene derecho a percibir del *corpus* y los intereses del fideicomiso que correspondían a éste. En segundo lugar, aduce que el foro primario se equivocó al determinar que la señora Paredes Despradel no cuenta con legitimación activa por no ser beneficiaria del fideicomiso y, por ello, la privó del 50 % de los frutos del fideicomiso, los cuales sostiene que son de carácter ganancial.

En tercera instancia, señala que el TPI incidió al desestimar la causa de acción referente a la inversión en el Fondo Mutuo y entender que ésta no es imputable a Banco Popular. Por último, sostiene que el foro de instancia falló al determinar que la ley aplicable al presente caso es el Código Civil de 1930.

En primer lugar, atenderemos el planteamiento sobre la legitimación activa, por ésta ser un requisito *sine qua non* para que una controversia sea justiciable y, consecuentemente, los tribunales posean jurisdicción para entender en ella. Ahora bien, toda vez que los primeros dos (2) errores señalados versan sobre la legitimación activa de la sucesión y de la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales, los discutiremos conjuntamente.

Surge de la *Sentencia Parcial* apelada que el foro primario resolvió que la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales no cuentan con legitimación activa por no ser beneficiarias del fideicomiso, conforme a la interpretación que el TPI realizó sobre las cláusulas de éste. Compartimos su criterio.

Del expediente ante nos, se desprende en la Escritura Núm. 96, sobre Fideicomiso, otorgada ante el notario Luis Raúl Irizarry Cuebas el 14 de octubre de 1991, lo siguiente:

> ---TERCERO: Se aclara que este fideicomiso es para el beneficio de los propios Fideicomitentes mientras éstos vivan y al fallecimiento de uno de tales, para el que sobreviva. **Cuando ambos fallezcan este fideicomiso será para beneficio de los Beneficiarios sustitutos nombrados en el d[é]cimo sexto de esta escritura**.
>
> [...]
>
> ---DECIMOSEXTO: **Disponen los Fideicomitentes el nombramiento de sus hijos Gloria, Josefina y Alfred Ramírez de Arellano del Valle como beneficiarios sustitutos hasta su fallecimiento del ingreso que produzca el remanente de los bienes fideicomitidos que pudiera no haber sido consumido al fallecimiento de aquel de los Fideicomitentes Fideicomisarios que haya sobrevivido al primero en fallecer, en partes iguales**.
>
> [...]
>
> ---Con respecto a los beneficiarios sustitutos disponen los Fideicomitentes que **el remanente de los bienes se mantenga en fideicomiso para el beneficio de sus tres**

**hijos hasta que ocurra el fallecimiento de cada uno de ellos, cuando la participación correspondiente al concernido se distribuirá entre sus herederos**, en la forma en que se dispone más adelante.

[...]

---**En la eventualidad de que al fallecimiento de Gloria, Josefina y Alfred, Ramírez de Arellano del Valle quedara sin consumir parte de la participación que en los bienes fideicomitidos correspondan a éstos**, tales bienes deberán distribu[i]rse a los herederos de los Fideicomitentes en armonía con las normas de Sucesión intestada que correspondan al fallecimiento de tales, si éstos no hubiesen expresado con anterioridad a su fallecimiento una voluntad testamentaria que altere la aplicación de dichas normas, de forma tal que al fallecimiento de cada uno de cualquiera de los designados como Beneficiarios sustitutos el principal y los intereses no distribu[i]dos que le correspondan le serán distribuidos a sus herederos conforme a lo que se exprese precedentemente en esta cláusula.[14]

Nótese que el contenido de la escritura constitutiva del fideicomiso es claro en cuanto a que la voluntad de los fideicomitentes era que, cuando fallecieran ambos, el ingreso producto del fideicomiso se transfiriera a sus beneficiarios sustitutos, sus hijos Gloria, Josefina y Alfredo Carlos Ramírez de Arellano del Valle. Asimismo, que, con el fallecimiento de los fideicomitentes, el remanente de los bienes fideicomitidos se mantenga en el fideicomiso para el beneficio de Gloria, Josefina y Alfredo Carlos Ramírez de Arellano del Valle hasta que ocurra el fallecimiento **de cada uno de ellos**, cuando, solo entonces, la participación correspondiente a cada uno se distribuirá a sus respectivos herederos.

La señora Paredes Despradel sostiene que los ingresos del fideicomiso correspondientes a Alfredo Carlos Ramírez de Arellano del Valle son frutos con carácter ganancial y, por ende, el 50 % de éstos corresponde a su participación en la Sociedad Legal de Bienes Gananciales compuesta por ella y Alfredo Carlos Ramírez de Arellano del Valle. No nos convence su planteamiento.

---

[14] Apéndice 5 de la *Apelación*, a las págs. 120, 127-128 (Énfasis y subrayado suplidos).

Como es sabido, cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. 31 LPRA ant. sec. 3471. En el presente caso, los términos del fideicomiso son claros y no permiten duda de que la señora Paredes Despradel ni la Sociedad Legal de Bienes Gananciales poseen legitimación activa para ser parte en la controversia de autos.

Específicamente, la escritura constitutiva del fideicomiso señala lo siguiente:

---DECIMOSEXTO:

[...]

---Con respecto a los beneficiarios sustitutos disponen los Fideicomitentes que el remanente de los bienes **se mantenga en fideicomiso** para el beneficio de sus tres hijos **hasta que ocurra el fallecimiento de cada uno de ellos**, cuando la participación correspondiente al concernido se distribuirá entre sus herederos, en la forma en que se dispone más adelante.[15]

Como vimos, los bienes fideicomitidos no son bienes peculiares o privativos de Alfredo Carlos Ramírez de Arellano, y demás está decir que tampoco son bienes comunes, por lo que los frutos que el *corpus* del fideicomiso devengue no gozan de una naturaleza ganancial. Como vimos, se reputan como bienes gananciales, los frutos percibidos o devengados durante el matrimonio que procedan de bienes comunes o de los privados de cada cónyuge. Artículo 1301 del Código Civil, 31 LPRA ant. sec. 3641.

Conforme a la escritura del fideicomiso, no hay duda de que las rentas de las que Alfredo Carlos Ramírez de Arellano se benefició en calidad de fideicomisario nunca provinieron de sus bienes peculiares, sino de bienes que estuvieron y están sujetos a un patrimonio fideicomitido. Siendo ello así, el 50 % de dichos ingresos no son parte de los bienes gananciales a los que la señora Paredes

---

[15] Apéndice 5 de la *Apelación*, a la pág. 127 (Énfasis suplido).

Despradel tenga derecho, por haber sido parte de la Sociedad Legal de Bienes Gananciales que compuso con su esposo.

Igualmente, la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales, así como la Sucesión, de la cual la primera tiene una parte alícuota, no pueden ser consideradas beneficiarias del fideicomiso.

Conforme a la voluntad de los fideicomitentes reflejada por sus claras disposiciones en la escritura constitutiva de fideicomiso, únicamente cuando concurra el fallecimiento de **cada uno de los beneficiarios sustitutos**, estos son **Gloria**, **Josefina** y **Alfredo Carlos Ramírez de Arellano**, los herederos de éstos podrán beneficiarse de los bienes fideicomitidos, si los hubiere.

Como vimos, un componente necesario para la justiciabilidad de un caso y, por ende, para que un tribunal tenga jurisdicción para entenderlo, es la legitimación activa. *Sánchez v. Srio. de Justicia, supra*, pág. 370. Es decir, para una parte pueda comparecer y exigir el remedio a un agravio, tiene que satisfacer el criterio de legitimación activa. *Hernández, Santa v. Srio. de Hacienda, supra,* pág. 739. Ello requiere que quien comparezca como promovente cuente con el derecho sustantivo a su favor. R. Hernández Colón, *op. cit.*, pág. 106. En otras palabras, que quien incoe el reclamo se encuentre en la posición de exigir un derecho que, jurídicamente, le asiste.

En el presente caso, la señora Paredes Despradel, y la Sociedad Legal de Bienes Gananciales, no satisfacen el requisito de legitimación activa. Las disposiciones del fideicomiso son claras en cuanto a quienes les corresponden las facultades y los derechos de los beneficiarios.

Por consiguiente, procedía la desestimación de las reclamaciones de la señora Paredes Despradel, por sí y en representación de la Sociedad Legal de Bienes Gananciales, por no

poseer legitimación activa. Por tanto, el foro primario no erró al desestimar las reclamaciones tanto de la señora Paredes Despradel y la Sociedad Legal de Bienes Gananciales, así como de la Sucesión.

Conviene ahora discutir el último error que señala la parte apelante. Como vimos, sostiene que el TPI erró al aplicar el Código Civil de 1930 al caso de autos, por cuanto entiende que es la Ley de Fideicomisos la legislación que impera sobre la presente controversia.

Como es sabido, es un principio cardinal en nuestro ordenamiento jurídico la irretroactividad de las leyes. Ésta máxima está consagrada en el Artículo 3 del Código Civil, el cual establece, en lo pertinente, que "[l]as leyes no tendrán efecto retroactivo, **si no dispusieren expresamente lo contrario**." 31 LPRA ant. sec. 3 (Énfasis suplido). Este postulado solo cede ante determinadas y supremas circunstancias que hayan sido establecidas por el legislador. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 777 (2022); *Nieves Cruz v. UPR*, 151 DPR 150, 158 (2000).

En el presente caso, el fideicomiso se constituyó el 14 de octubre de 1991, según surge en la escritura de constitución, mientras que la Ley de Fideicomisos advino en vigencia el 31 de agosto de 2012. Sin duda alguna, la intención legislativa, según consta en la exposición de motivos de la antedicha ley, fue "que el fideicomiso se [consagrara] en una ley especial fuera del Código Civil."

No obstante, dada la máxima jurídica de que la ley tiene efecto prospectivo, a menos que se disponga expresamente lo contrario en ella, y ante la orfandad en la Ley de Fideicomisos de alguna disposición que exprese su carácter retroactivo, es claro que las disposiciones de ésta no son aplicables al fideicomiso del presente caso, por cuanto fue constituido mientras regían las disposiciones del Código Civil. Recordemos que, en ausencia de la intención

legislativa de brindar el carácter retroactivo a una ley, "entonces la ley aplicable al asunto es la que estaba vigente cuando ocurrieron los hechos que dan lugar a la causa de acción." *Ortiz Ortiz v. Medtronic, supra*, pág. 777 (citando a *Nieves Cruz v. UPR, supra*, pág. 159).

Por consiguiente, no erró el foro primario al aplicar las disposiciones del Código Civil sobre fideicomisos al presente caso.

Por último, la parte apelante sostiene que el foro *a quo* se equivocó al desestimar el reclamo en contra de Banco Popular por la pérdida relacionada a la inversión en el Fondo Mutuo. El TPI razonó que dicho reclamo no era imputable a Banco Popular por cuanto la transacción en cuestión fue efectuada por el fiduciario anterior, Banco Santander. Le asiste la razón.

Como vimos, si el incumplimiento de una obligación contractual produce daños, la parte perjudicada puede instar una acción para reclamar la indemnización que corresponda. No obstante, dicha acción tiene que ir dirigida en contra de la parte que cometió el quebrantamiento de su deber contractual.

A esos efectos, y como expusimos, el Código Civil dispone que quedan sujetos a indemnización quienes contravienen sus obligaciones contractuales y, por ello, le causan daños y perjuicios a la otra parte contratante. Artículo 1054 del Código Civil, 31 LPRA ant. sec. 3018.

Igualmente, el Código Civil es claro en cuanto a que un fiduciario "no será responsable de ninguna equivocación de criterio, de ningún error de hecho o de derecho, ni de ningún acto u omisión, **a excepción de su propio descuido voluntario o negligencia manifiesta**." Artículo 862 del Código Civil, 31 LPRA ant. sec. 2569 (énfasis nuestro).

En el presente caso, surge que la inversión en el Fondo Mutuo fue realizada por Banco Santander y no por Banco Popular. Por

ende, el reclamo relacionado con la inversión de Banco Santander no puede ser imputado a Banco Popular por cuanto no surgió de su propia actuación. Es decir, tomando en consideración que el foro primario mantuvo las causas de daños y perjuicio por incumplimiento de contrato y violación del deber de fiducia, resulta evidente que las alegaciones correspondientes a dichas reclamaciones permanecen pendientes ya que, el Banco Popular podría ser responsable únicamente de su intervención o sus acciones directas sobre el Fondo Mutuo.

Lo anterior se encuentra especificado en el *Instrument of Resignation, Appointment and Acceptance of Trusteeship*, suscrito el 21 de diciembre de 2012, por el cual Banco Santander se sustituyó por Banco Popular como fiduciario. En éste, las partes comparecientes, entiéndase, Banco Popular, Banco Santander y los fideicomitentes, Alfredo Ramírez de Arellano y Esther del Valle, pactaron que Banco Popular no sería responsable por los daños o pérdidas que surgieran de las actuaciones u omisiones negligentes realizadas por Banco Santander con anterioridad a la sustitución.[16]

Siendo así, cualquier reclamación atribuible a la intervención directa que pudo haber tenido Banco Popular sobre el Fondo Mutuo, podrá ser objeto de litigio para las partes en la causa de acción en contra de Banco Popular por incumplimiento del deber de fiducia que se mantiene *sub judice* ante el TPI.

---

[16] Apéndice 5 de la *Apelación*, a la pág. 333. Específicamente, el documento expresa lo siguiente:

> Under no circumstances shall the Successor Trustee liable for any Claims (as defined below), losses and /or damages arising from any negligent act or omission of the Resigning Trustee occurring prior to the Effective Date in connection with the administration of the Trust and the Plan and/or the investment of Trust assets. As used herein, the term "Claim" or "Claims" shall refer to any claims, lawsuits, investigations, causes of action or other legal actions and proceedings brought or filed against the Resigning Trustee for negligent acts or omissions occurring prior to the Effective Date in connection with the administration of the Trust and the Plan and/or the investment of Trust assets.

Consecuentemente, erró el TPI al desestimar en su totalidad el reclamo en contra de Banco Popular relacionado con el Fondo Mutuo.

### -*IV*-

Por los fundamentos que anteceden, los cuales hacemos formar parte de este dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones